## BURDETT *v.* ESTEY and others.

*(Circuit Court, D. Vermont.  ——, 1880.)*

1. PATENT—PROFITS.—The profits of a patented invention consist of the difference between cost and yield.
    *Rubber Co.* v. *Goodyear*, 9 Wall. 788.

2. SAME—SAME—INFRINGEMENT.—The infringer of a patented invention is liable to account for profits, although he might have employed some other contrivance to nearly or quite the same profit.
    *Elizabeth* v. *The Pavement Co.* 97 U. S. 126.

3. SAME—SAME—PRODUCT.—Where the subject of the invention is a product, the profits upon such product will be allowed.

4. SAME—SAME.—Where no profits have accrued by the use of such product, no profits will be decreed upon account of such infringement.

5. SAME—SAME—DAMAGES—REV. ST. § 4921.—In such case damages may be had under section 4921 of the Revised Statutes, where sufficient basis can be furnished upon which to find such damages.

6. ANTEDATED PATENT—PROFITS—ACT OF MARCH 2, 1861, § 16—ACT OF JULY 4, 1836, § 8.—The act of March 2, 1861, § 16, providing that all patents should remain in force for the term of 17 years from the date of issue, is subject to the provisions of the act of July 4, 1836, providing that the applicant for a patent could have it take date from the time of filing the specification and drawings, but not more than six months prior to the actual issue; therefore, where a patent was issued under the act of 1861, but antedated in accordance with the provisions of the act of 1836, an infringer of such patent is liable to account for all profits actually received from the use of the invention after the time to which the patent was antedated.

7. INFRINGEMENT—MISTAKE.—An infringement will be treated as deliberate and intentional where the infringer knew of the patent infringed, but erroneously supposed that another patent owned by the infringer covered the right to use the invention.

8. SAME—PROFITS—INTEREST.—Profits derived from the infringement of a patent bear interest from the time they were wrongfully detained.

In Equity.

*Charles B. Stoughton, Edward J. Phelps, J. M. Tyler,* and *Kittredge Harkins,* for orator.

*Dickerson & Brennan* and *Charles N. Davenport,* for defendants.

WHEELER, D. J.  This cause has now been heard upon the master's report, and exceptions thereto.  The patent is for an

additional partial set of reeds, placed in the common double reed board of an organ, between the short reeds of the other two sets, inclined and extending downward to the same base, without separating the other sets any further apart than they would be alone, and without lengthening the valve openings or increasing the power necessary to operate the instrument, and is dated February 23, 1869; antedated August 24, 1868. The specification described tuning this set on a key slightly different from that of the other sets, whereby a wavy tone of music would be produced, and set forth independent dampers for each set, which were claimed in the patent, but to which it was found and held that the inventor was not entitled, and which he was required to disclaim before having a decree; which he did, and filed proof of in court, December 4, 1878, whereupon a decree was entered for, among other things, this accounting.

The master reported that between August 24, 1868, the antedate of the patent, and February 23, 1869, the date of its actual issue, the defendants made and sold a considerable number of organs, and between February 23, 1869, and May 1, 1874, a large number more, all of which contained partial sets covered by the orator's patent, and on all but a very few of which they received profits in additional price on account of the partial sets, stated separately for each space of time; that the wave-tuning was an important factor in producing the additional profits for the partial sets; that horizontal partial sets placed on the upper surface of the reed board, instead of being inclined into it, not covered by any patent, and not then in use, would have been practically as good as the inclined sets; that the orator testified that he should judge that a firm of which he was a member would have sold at least 100 organs a month more than they did if they had controlled the patent, and that there was no other evidence as to damages, whereupon none were allowed; and that he allowed to the orator the whole profits stated, subject in whole and in detail to the opinion of the court upon the questions presented.

The principal questions raised upon the report and excep-

tions, and insisted upon in argument, are: whether the orator is entitled to recover for anything done or received before the actual issue of the patent; whether, upon the facts stated, the orator is entitled to these profits at all; whether, if entitled to profits, he should not be allowed to recover as for profits on those infringing organs disposed of without profit on that account, at the same rate as on those for which profits were received; whether, on the evidence, some damages, in addition to profits, should not have been found; whether the orator is entitled to interest on the profits allowed, and, if so, from what time; and whether he is entitled to any costs upon the accounting or in the suit.

Although this patent was granted under the act of March 2, 1861, which provided, in section 16, that all patents should remain in force for the term of 17 years from the date of issue, it was subject to the provisions of section 8 of the act of July 4, 1836, (5 St. at Large, 117,) which were not superseded by the act of 1861. *De Florez* v. *Raynolds*, 17 O. G. 503.

By the provisions of that section the applicant for a patent could have it take date from the time of filing the specification and drawings, but not more than six months prior to the actual issue. This patent was not antedated more than six months, and came within those provisions. It is not like a re-issued patent, expressly restricted in operation to causes of action thereafter arising, (Act of 1836, § 13; Rev. St. § 4916; *Moffit* v. *Garr*, 1 Black, 273;) but it has the full authority of the act of congress, giving it effect from the prior date; and congress has as full power to protect the rights of an inventor before the granting of a patent as after.

The wave-tuning was common and free to all alike, the same as the wood of the reed boards, or the metal of the reeds; neither the defendants nor any one else had any monopoly of it. When the defendants used it in appropriating the orator's invention, the rights and liabilities arising were precisely like those arising from the use of the wood and metals; that is, they became entitled to be allowed its cost in accounting for the profits. The patented invention was the orator's property; he is entitled to the profits of the use.

the defendants made of it, which was the difference between cost and yield. *Rubber Co.* v. *Goodyear*, 9 Wall. 788.

The tuning cost nothing but the labor and skill of the tuner, and for that the master has allowed. The sets of reeds are arranged for making music by being tuned in any mode open to use, and the defendants are not entitled to have the profits of the partial set governed by what it would have brought independently of this kind of tuning any more than of any other; nor any more than they are entitled to have them reckoned at what it would have brought independently of the air to operate the reeds, or of the principles of music by which the instruments could be played, except what this kind of tuning might have cost more than those would. This case is very different from *Mowry* v. *Whitney*, 14 Wall. 620, relied upon by the defendants. There the patent was for a process of making wheels, which, as a product, were not covered by the patent. The defendants were charged by the circuit court with the whole profits on the wheels, instead of the profits of the savings by the patented process. This was held to be wrong, and the plaintiff there was required to distinguish the profits due to the patented process from those received on the whole wheel, before he could recover them. What was required to be done there has already been done here. Large profits were made by these defendants on these organs, aside from those on the partial sets, for which there has apparently been no attempt to charge them.

The master has carefully distinguished the profits arising directly from the partial sets from the rest. He has ascertained the difference between what it cost the defendants to make and sell that, and what it brought them. This was the profit on that thing. The fact that the defendants might have employed a horizontal partial set to nearly or quite the same profit, does not vary this aspect of the case. The partial set, arranged in a reed board according to the orator's patent, was a thing by itself, different from anything else, and there was no exact equivalent for it. It was that upon which they made the profit charged. If they had employed the horizontal set instead of it, they would not have tres-

passed upon the orator's rights; but they did not take that course. If they knew then, as they know now, that the horizontal set would answer their purposes nearly or quite as well, they preferred to take the orator's invention. Having done that, they are liable to account to him for what they gained by that taking, without reference to what they might have gained if they had taken something else.. *Elizabeth* v. *Pavement Co.* 97 U. S. 126. The difficulties about this subject consist in ascertaining with certainty what profits are due to the infringement. In *Mowry* v. *Whitney*, where a process only was infringed, what was made by the process only was allowed. In *Elizabeth* v. *Pavement Co.*, where the product was infringed, the profits on the product were allowed. Here the partial sets are products; the profits upon them are ascertained, and their profits must be allowed.

As no profits accrued to the defendants on a part of the organs made and disposed of by them containing the orator's improvement, none can be decreed to the orator on account of that infringement. It is what the defendants did gain, not what they might have gained, that they are accountable for by way of profits. *Livingston* v. *Woodworth*, 15 How. 546; *Elizabeth* v. *Pavement Co.* 97 U. S. 126. If such profits, when recovered, will not make the patentee whole, he must resort to his remedies for damages. The statute provides that in cases like this an account of the damages may be taken and they be decreed to the orator. Rev. St. U. S. § 4921. But they must be proved to the master, as in actions at law they must be to the jury. This case furnishes no evidence from which such damages could be found with any satisfactory or sufficient degree of exactness. It does not at all appear that the orator would have supplied organs in place of these, on which no profit was made, for the partial set, if the defendants had not disposed of them without profit; and without some such proof the damages could not be found.. *Buesk* v. *Imhaeuser*, 14 Blatchf. 19. Neither does the evidence as to other damages afford any sufficient basis from which the master would be warranted in finding any. It did not appear that the defendants were supplying the same markets

or customers as the orator, to any definite extent. *New York* v. *Ransom*, 23 How. 87; *Ingersoll* v. *Musgrove*, 14 Blatchf. 541.

According to these views the defendants are liable to account to the orator for the profits actually received by them from the use of his invention after the time to which the patent was antedated, and not for any other supposed profits or damages. The actual cost of making the partial sets containing the invention, from which profits were received, was $53,909.28; the amount actually received for them was $202,-948.28; and the actual profit on account of them was $149,-039. These profits came to the defendants' hands in money, and the amount appeared upon their books. It was received for an infringment upon the orator's rights, and they became trustees of it, although unwilling, for him to whom it belonged. They knew of the patent in suit, although they supposed that another patent to the plaintiff, which they owned, covered the right to make this partial set. Such an infringement was treated as being deliberate and intentional by *Woodruff*, J., in *Russell* v. *Place*, 9 Blatchf. 173. In *Littlefield* v. *Perry*, 21 Wall. 205, it is intimated that interest may be allowed upon profits actually realized under such circumstances, in order to give complete indemnity for the wrong. On principle, money so received ought to bear interest while wrongfully detained. *Elkins* v. *East India Co.* 1 P. Wms. 395; *People* v. *Gusherie*, 9 John. 71; *Wood* v. *Robbins*, 11 Mass. 504; *Crane* v. *Thayer*, 18 Vt. 162.

Before the disclaimer, however, this money was not wrongfully detained. Without the disclaimer, as has been held in this case, the orator could not have a decree. The defendants are to be supposed as having known that he had a right to disclaim and have a decree, but they could not know that he would disclaim, and therefore could not know that they would have the money to pay over, and could not be in default for not paying it until that was done, and the evidence of it produced. While the money so laid in their hands they were not wrongfully detaining it, and could not justly be charged with the interest upon it. *Hubbard* v. *Charleston R. Co.* 11 Met. 124. But after the disclaimer was filed in the

patent-office, and proof of it filed in this court, and decree thereupon entered that the defendants should account to the orator for the profits which this money in their hands represented, they had full knowledge of the orator's right to the money, as those rights are considered in this court, and detained the money against his right, and should be charged with interest upon it. *Steam Stone-cutter Co.* v. *Windsor Manuf'g Co.* Dist. Vt., May term, 1879. The proof was filed and the decree entered on the same day, so there is no question as to whether interest should begin to run from one date or the other in this case.

The right of the orator to costs depends wholly upon the provisions of the statute. They are a creature of statutes, and were not recoverable at all at common law. This suit could not have been maintained at all but for the provisions of section 4922, Rev. St., allowing a disclaimer of what would otherwise defeat the patent. If the disclaimer is filed before suit, the case stands, as to costs, like any other case for infringement; but, where the disclaimer is not filed until after suit, although that may not prevent a decree or judgment for the plaintiff, the statute is express that, in every such case in which a judgment or decree shall be rendered for the plaintiff, no costs shall be recovered. The provision is not that no costs shall be recovered until after disclaimer, but it is as extensive as the whole existence of the case, and prohibits the recovery of any costs at all in the case.

Other questions have been debated to some extent, and considered, but they either relate to questions of fact disposed of by the master upon warrantable evidence before him, or are not controlling upon any decisive feature of the case, and no further notice of them is thought to be necessary.

It follows that the orator is entitled to a decree for the payment to him, by the defendants, of the sum of $149,039, with interest thereon from the fourth day of December, 1878.

The foregoing decision embodies the concurring views of the circuit judge and the district judge before whom the case has been heard.

The exceptions are respectively overruled and sustained

accordingly. The items relating to the 29 organs on which no profits were collected, and 46 organs on which none were charged, are disallowed. The residue of the report is accepted and confirmed, and a decree thereupon ordered for the payment of said sum, with interest to this sixth day of April, 1880, which amounts to $11,972.79,—making, in the whole, $161,011.79,—and for execution therefor.