### HARDER v. IRWIN, Collector of Internal Revenue.

(District Court, N. D. New York. January 2, 1923.)

**1. Internal revenue ⊕⇒7—Income tax statute; "deemed" means conclusively presumed.**

In the provision of Revenue Act 1916, § 31(b), as amended by Act Oct. 3, 1917 (Comp. St. § 6336z), that any distribution made to the shareholders of a corporation "shall be deemed to have been made from the most recently accumulated undivided profits or surplus," the word "deem-

ed" is to be construed as an absolute requirement or raising a conclusive presumption.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deem.]

2. Internal revenue ⟨⟩7—Corporations may not determine that dividends declared are from earnings of prior, rather than later, years. ·

Under Revenue Act 1916, § 31(b), as amended by Act Oct. 3. 1917 (Comp. St. § 6336z), a corporation may not determine for itself that dividends declared are out of profits accumulated in earlier years, if there are profits of later years undistributed.

3. Internal revenue ⟨⟩7—Dividends declared by corporation deemed to include profits of current year.

The provision of Revenue Act 1916, § 31(b), as amended by Act Oct. 3, 1917 (Comp. St. § 6336z), that any distribution made to the shareholders of a corporation "shall be deemed to have been made from the most recently accumulated undivided profits or surplus" includes in the "most recently accumulated undivided profits" those accumulated between the close of the preceding taxable year and the date of distribution.

4. Internal revenue ⟨⟩7—"Profits" and "surplus," used in statute, to be given their common meaning.

In Revenue Act 1916, § 31(b), as amended by Act Oct. 3, 1917 (Comp. St. § 6336z), providing that any distribution made to the shareholders of a corporation "shall be deemed to have been made from the most recently accumulated undivided profits or surplus," the words "profits" and "surplus" are not limited to the meaning given them by accounting experts, under which there are no profits or surplus until set aside at the end of an accounting period, but are to be given their common and generally understood meaning and include profits of the current year allocated to the period before distribution.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Profit; Surplus.]

At Law. Action by Fannie E. Harder against Roscoe Irwin, Collector of Internal Revenue for the Fourteenth District of the State of New York. Judgment for defendant.

Gilbert & Gilbert, of New York City (A. S. Gilbert, of New York City, of counsel), for plaintiff.

Hiram C. Todd, U. S. Atty., of New York City, and Earl H. Gallup, Asst. U. S. Atty., of Albany, N. Y. (Carl A. Mapes, of Washington, D. C., Solicitor of Internal Revenue, and Chester A. Gwinn, of Washington, D. C., of counsel), for defendant.

COOPER, District Judge. This is an action brought by plaintiff to recover the sum of $29,958.88 income tax for the year 1917, which she alleges was illegally exacted from her by the defendant as internal revenue collector. The facts are substantially undisputed and are as follows:

In 1917, and for some years prior thereto, the High Rock Knitting Company (hereinafter referred to as the company or corporation) was a manufacturing concern having its principal office and place of business at Philmont, N. Y. The plaintiff was a stockholder, owning 1,200 shares of a total of 3,500 shares of common stock of the corporation, of the par value of $100 each. The principal source of plaintiff's in-

come was from this stock. On December 12, 1917, the board of directors of said corporation adopted the following resolution:

"Motions were then passed to declare and pay on December 15th to common stockholders of record of that date, the following dividends: 20 per cent. from cash surplus accumulated during 1916; 60 per cent. from cash surplus accumulated during 1915; 120 per cent. from cash surplus accumulated prior to December 31, 1913."

On December 20, 1917, the corporation, pursuant to said resolution, distributed in dividends the sum of $700,000, of which the plaintiff received $240,000, and in her income tax return for the year 1917 plaintiff reported the amount received by her from the High Rock Knitting Company, and allocated 20 per cent. thereof as taxable under the 1916 rates, 60 per cent. as taxable under the 1915 rates, and 120 per cent. thereof as nontaxable, because declared by the resolution as payable out of profits accrued before March 1, 1913. When the books for the year 1917 were audited by Price, Waterhouse & Co., some time after the close of the calendar year, it was shown that the profits of the company for the year 1917 were $424,958.53, after allowing $250,-000 for corporate income tax for that year.

The Internal Revenue Department, on auditing plaintiff's return for the year 1917, made the claim that the first $400,000 of the $700,000 distributed by the company must be taken out of the earnings for the year 1917 and taxable to the stockholders at the rate in force for that year. The department therefore imposed an additional assessment on the plaintiff in the sum of $30,611.12, which she paid under protest. The plaintiff, upon a reaudit of her account, conceded that all of the 1916 surplus had to be exhausted before resorting to the accumulation prior to March 1, 1913, and so claimed only the sum of $29,958.88 as having been erroneously assessed.

[1] The case turns upon the construction to be given section 31(b) of the Revenue Act of 1916, as amended by the Act of October 3, 1917 (40 Stat. 300 [Comp. St. § 6336z]). The language of the section, so far as applicable to this case, is as follows:

"Any distribution made * * * in the year nineteen hundred and seventeen * * * shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute a part of the annual income of the distributee for the year in which received, and shall be taxed to the distributee at the rates prescribed by law for the years in which such profits or surplus were accumulated by the corporation."

Two questions are presented: (1) Whether the word "deemed," in section 31(b) means a conclusive presumption, or merely a rebuttable presumption. (2) Assuming that the word "deemed" is to be construed as an absolute requirement or conclusive presumption, must corporate profits earned in the year 1917 be included in the corporation's "most recently accumulated undivided profits or surplus" within the meaning of section 31(b)?

To ascertain the intention of Congress, it is necessary to refer briefly to each Income Tax Act since the adoption of the Sixteenth Amendment, with reference to its application to the distribution of the earnings of corporations to the shareholders thereof. Acts relating to income

tax were passed in 1913, 1916, and 1917. Under the income tax act of 1913, retroactive to March 1, 1913, dividends distributed during the taxable period of 1913 and the years of 1914 and 1915 were taxable to the recipients, under the "surtax" provision, at the rates current during those years, whether the profits out of which such dividends were declared were accumulated before or after March 1, 1913. Lynch v. Hornby, 247 U. S. 339, 38 Sup. Ct. 543, 62 L. Ed. 1149; Southern Pacific v. Lowe, 247 U. S. 330, 38 Sup. Ct. 540, 62 L. Ed. 1142. The 1916 act, however, permitted the declaration of dividends tax free out of surplus created prior to March 1, 1913, even though profits earned subsequent to March 1, 1913, remained undistributed, leaving dividends declared from profits earned since March 1, 1913, taxable at the rate in existence at the time such dividends were received by the stockholders, as in the act of 1913.

Under the amendments of 1917, passed October 3, 1917, profits accumulated prior to March 1, 1913, might still be distributed tax free, "after the distribution of earnings and profits accumulated since March 1, 1913, has been made," and dividends paid from earnings accumulated since March 1, 1913, were made taxable at the rates in effect during the years when the profits out of which the dividends were made were accumulated, instead of at the rates of the year in which they were received, with a new provision added that any distribution made during the year 1917, or any subsequent year, "shall be deemed to have been made from the most recently accumulated undivided profits or surplus."

The act of October 3, 1917, was passed almost six months after the United States had entered the World War, and was entitled "An act to provide revenue to defray war expenses and for other purposes." Taxes and surtaxes were increased generally by this statute, and it is evident that the object of the statute was to raise large revenues needed in emergency to successfully carry on the war.

The word "deemed," as used in the amendment of 1917, is a transitive verb, defined in Webster's New Unabridged Dictionary as:

"To sit in judgment over or upon; to judge; also to pronounce judgment upon; to decide; to regard."

The word "deemed" has been judicially defined. In Leonard v. Grant (C. C.) 5 Fed. 11, 16, it is stated that:

"'Deemed' is the equivalent of 'considered' or 'adjudged,' and therefore whatever an act requires to be 'deemed' or 'taken' as true of any person or thing, must, in law, be considered as having been duly adjudged or established concerning such person or thing, and have force and effect accordingly."

In U. S. v. Doherty (D. C.) 27 Fed. 730, 734, it was thus defined:

"'Deem' means 'judge;' 'determine on consideration.' The primary meaning of the word is to form a judgment; to conclude on consideration." Words and Phrases, First Series, "Deem."

There are several other judicial expressions of the word "deemed," among them being in Walton v. Cavin, 16 Q. B. 48, 81, where it was stated that where a person was "deemed" to be a soldier it must be understood to mean that he was thereafter to be taken in that capacity.

Also, in Cardinel v. Smith, 5 Fed. Cas. 45, 47, No. 2,395, the statute provided that dealers in canned goods under certain circumstances shall be deemed to be manufacturers and the court stated that they were to be held liable as manufacturers, notwithstanding that they were not such in fact. Other cases to the same effect are Lawrence & Co. v. Seyburn, 202 Fed. 913, 121 C. C. A. 271; Michel v. Nunn (C. C.) 101 Fed. 423, 424.

It is evident from the general scheme of the statute that it was the intention of Congress in the amendment of 1917 to require not only distribution of the earnings and profits accruing since March 1, 1913, which distribution is subject to tax, before there could be a tax free distribution of earnings and profits accruing prior to that date, but also a distribution of the most recent and most highly taxable profits or earnings before resort could be had to the earlier profits even though earned since March 1, 1913, and therefore also taxable, but at a less rate. Section 31 (b) of the 1917 amendment was enacted to express such purpose.

To permit the distributing corporation or the taxpayer to determine out of what profits the dividends are distributed is out of harmony with both the language of the section and the intent of the act. The same section further provides that:

"This subdivision shall not apply to any distribution made prior to August 6, 1917, out of earnings or profits accrued prior to March 1, 1913."

If the provision of section 31 (b) merely created a rebuttable presumption, enabling the corporation to elect out of what years accumulated distributions are made, then there would have been no need for inserting the provision exempting distributions made before August 6, 1917, out of earnings or profits accrued prior to March 1, 1913.

[2] The corporation may not, therefore, by its act declare that its distribution of dividends at any time after the act of October, 1917, is out of profits accumulated in earlier years, if there are profits of later years untouched. To do so is void because in conflict with the statute. The statute means that, regardless of the form of the declaration, it is conclusively presumed that the distribution is out of the most recently accumulated undivided profits or surplus.

[3] The second and more important question to be decided with reference to dividends declared and paid in 1917 is: Must corporate profits earned in the year 1917 be included in the corporation's "most recently accumulated undivided profits or surplus" within the meaning of the statute? Do these terms mean and include the current earnings of the calendar or corporate fiscal year in which the distribution is made, or do they mean only those accumulated prior to such calendar or fiscal year? The plaintiff has shown that its books are fully audited and inventory taken and profit and loss statement made up only once a year and at the close of the calendar year.

The plaintiff has cited the works of numerous accountants and others, upon authority of which counsel contends that the words of the statute cannot apply to and include the current earnings or profits down to the date of the distribution, because to do so is contrary to the

practice of accounting and bookkeeping, and actual profits cannot be definitely known without audit and inventory and appraisal, which is customarily done once a year, and directors cannot be presumed to have voted or intended to vote to declare dividends payable out of earnings up to the minute, for at best they can but guess before an audit and inventory, and a wrong guess subjects them to personal liability. Counsel for plaintiff insists Congress must be deemed to have known the principles and practice of corporate accounting, and that Congress must be presumed to have framed its act of 1917 in the light of such knowledge. There is undoubtedly much force to that contention

But Congress must also be presumed to have known that few corporations pay dividends annually only; that the great majority of dividend-paying corporations declare dividends quarterly or semiannually, and pay them out of earnings or profits very recently earned, whatever be the form of bookkeeping entry, sometimes, when none are earned, resorting to the surplus of previous years. Congress also knew that the war upon which the nation has just embarked might, and probably would, be a great disturbance to some kinds of business. To some corporations or persons manufacturing things needed for the prosecution of the war, great profits would accrue. The business of others might be greatly injured, if not destroyed, by the restrictions upon transportation, use of material, labor supply, and perhaps in other ways. Such latter corporations might have considerable losses, instead of profits, and would have to draw on the surplus and undivided profits of more prosperous times to pay any dividends at all.

To have declared by statute that any dividends declared after the act of 1917 must be conclusively presumed to be distribution of current earnings, and taxable at the war rates of the 1917 act, and counsel for plaintiff contends Congress could and would have said so, if it meant to include such earnings, would have worked much hardship and defeated to some extent the purpose of the act of 1917. That act was intended to greatly increase the revenue from the income tax. To have declared that all dividends must be conclusively presumed to have been distributed out of current profits or earnings, in cases when there were none, would have interfered with Congress' purpose in at least these respects:

(1) The government would not be able to collect any taxes upon dividends of loss-making corporations, no matter how great their previous surplus, because loss-making corporations could not be compelled to, and would not, declare any such highly taxable dividends in the losing years out of previous profits, and therefore there would be nothing to tax.

(2) The stockholder would suffer because instead of getting dividends regularly in lean years from the accumulations of the fat years, as, in the case of most stable corporations, he would get no dividends at all.

(3) The stock upon cessation of dividends would materially depreciate in value, causing loss to the owner, and possibly tending to unsettle the value of other stocks.

Confronted with the necessity of raising more revenue for war purposes, and not wishing to defeat its purpose or penalize any loss-making corporation, and deter it from declaring dividends out of former profits, Congress could not well enact that distributions in 1917 and subsequent years should be deemed or conclusively presumed to have been made from the earnings or profits of the time of the distribution, when in fact there might be loss instead of profit, and therefore had to resort to language which would permit the loss-making corporation to declare dividends, though not earned, out of previous profits, and have them taxed at the rate prevailing in the year in which earned, and at the same time tax the profit-making corporation at the war rate on the distributions of the current war profits.

Accordingly Congress enacted in 1917 that distributions after August 6, 1917, "shall be deemed to have been made from the most recently accumulated undivided profits or surplus," and "shall be taxed to the distributor at the rates prescribed by law for the years in which such profits or surplus were accumulated." By this language a loss-making corporation could declare dividends after the act out of the most recently accumulated profits or surplus, and the stockholder would be taxed at the rate of the year in which the profits were earned, and a profit-making corporation's dividend distributions would be taxed at the war rate.

To compel distribution of the war profits, section 10 (b) was inserted in the 1917 amendment, providing for a tax on corporations, in addition to all other taxes, of 10 per cent. on earnings not distributed within six months after the end of the calendar year in which earned, except such part thereof as might actually be invested or employed in the business, and in case of fraud in the amount of profits claimed to have been invested in the business the tax was 15 per cent., instead of 10 per cent.

Under all the previous income tax laws, dividends were taxable in the year when received. The 1916 act did not change the law in this respect, but permitted dividends declared from earnings accrued previous to March 1, 1913, to be distributed tax free. There was no question, then, under the acts of 1913 and 1916, whether the distributions of the current year were taxable or not, as such distributions were expressly made subject to tax at the rate of the year when received, except, of course, distributions from earnings accumulated prior to March 1, 1913.

Is it conceivable that in 1917, with the country engaged in the greatest war in history, when more money was needed than ever before, Congress would deliberately change the income tax law, and, instead of having income taxes coming in yearly on dividends distributed each year, regardless of when earned, except when earned before March 1, 1913, would provide for an interval of a whole year when no taxes could be levied on dividend distributions in 1917, unless distributed from the accumulated earnings of previous years? The answer must be evident.

Yet plaintiff's contention means nothing less. In the later amendment, passed in 1918, Congress removed the ambiguity arising from

the words "most recently accumulated undivided profits or surplus," in the statute of 1917, by enacting that distributions made after the first 60 days of a taxable year are "deemed to have been made from the earnings or profits accumulated between the close of the preceding taxable year and the date of distribution, to the extent of such earnings or profits."

Had this language been used in the statute of 1917, this case would probably not have arisen. The amendment enacted in 1919 was evidently not to change the statute, but to clarify it. So considered it supports the views above set forth.

[4] The plaintiff relies upon the definition given the words "accumulated undivided profits or surplus" by works on accounting. While it is undoubtedly true these works are recognized as authorities for bookkeepers and accountants, and might have been known by some members of Congress when the legislation in question was enacted, nevertheless it is apparent that this statute was prepared for the general public, and the ordinary interpretation of the words must be taken, rather than any technical limitation which may be placed upon them by experts. In a technical sense, no profits become undivided profits or surplus until they have been set aside at the end of an accounting period and allocated to certain funds known to accountants and bookkeepers as "undivided profits or surplus."

Montgomery on Auditing, Theory & Practice, pp. 199–205, recognizes the distinction between the common significance and the technical understanding of the word "surplus." In Lewis' Sutherland Statutory Construction, vol 2 (2d Ed.) p. 753, it is stated:

"Words in common use, and also having a technical sense, will, in acts intended for general expression and not dealing especially with the subject to which such words in a technical sense apply, be understood primarily in their public sense, unless they are defined in the act or a contrary intention is otherwise manifest."

In common phraseology, "surplus" is that which remains when use or need is satisfied; it is the excess or overplus. The word "surplus" has been judicially defined as "that which remains after expenses and dividends." 4 Words and Phrases, Second Series, p. 807. "Profits" has ordinarily been designated as the gain made in any business or investment, both receipts and payments taken into consideration. Burdett v. Estey (C. C.) 3 Fed. 566, 569; Providence Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 788, 19 L. Ed. 566.

The Treasury Department regulation, known as article 107, regulation 33, revised, has stated the department's construction of section 31 (b) of the act of 1917, in the following language:

"If a corporation distributed dividends in 1917 such dividends will be deemed to have been paid from the earnings of 1917, and the recipient, if an individual, will be liable to additional tax, if any, and if a corporation to income tax, at the rates for the year 1917, unless it is shown to the satisfaction of the Commissioner of Internal Revenue that at the time such dividends were paid the earnings up to that time were not sufficient to cover the distribution, in which case the excess over the earnings of the taxable year will be deemed to have been paid from the most recently accumulated surplus of prior years and will be taxed at the rate or rates for the year or years in which earned."

This construction is in entire harmony with the views herein set forth. When the meaning of a statute is doubtful, great weight should be given to the construction placed upon it by the department charged with its execution. U. S. v. Cerecedo Hermanos y Compania, 209 U. S. 339, 28 Sup. Ct. 532, 52 L. Ed. 821. It is not necessary, however, in this case to resort to the construction by the department. Any other construction would make great confusion in respect to all the quarterly and semiannual dividends paid in 1917 and intended to be distributed from the earnings of that year, upon which tax at the war rate of 1917 has undoubtedly been paid by multitudes of taxpayers.

Despite the inhibition contained in the statute against distribution of profits accrued before March 1, 1913, until the most recently accumulated undivided profits or surplus were disposed of, the corporation allocated $366,189.19 of the earnings and profits accrued prior to March 1, 1913, to the payment of the $700,000 dividend declared and distributed in December, 1917. The plaintiff taxpayer made a like proportionate allocation. The prorated earnings of 1917 to December 20th, the date of the distribution of the aforesaid dividend, were $410,-987.29, and yet the claim is that no part of these earnings were used in the payment of the dividend. It cannot under a fair construction of the statute be denied that the earnings and profits for the year 1917 were undivided profits, nor can it be disputed that they were the most recently accumulated earnings and profits which had accrued since March 1, 1913. The dividend must be conclusively presumed to have been paid from these profits of the year 1917 to the extent thereof, up to the date of declaration of dividend, regardless of the language of the resolution or the intent of the company.

The assessment was properly levied against the plaintiff, and her complaint must be dismissed.