**LELAND et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 2550.

Circuit Court of Appeals, First Circuit.
June 10, 1931.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a petition to review decisions or orders of the Board of Tax Appeals in three different matters which were consolidated and brought here as a single case, as each involved the same question. The petition questions the determination of the Board of Tax Appeals of the income taxes of William H. Leland for the years 1922 and 1924, and of Albert G. Gifford for the latter year. The sums upon which the income taxes for these years were assessed were distributions made in the respective years by the Leland-Gifford Company to Leland and Gifford, of which they and one Nikoloff were the sole stockholders Gifford, and Leland each owning a five-twelfths interest and Nikoloff a two-twelfths interest in the outstanding shares of the corporation.

The statutes involved are section 201 (a), (b), and (c) of the Revenue Act of 1921, 42 Stat. c. 136, p. 227; and section 201 (a), (b), and (c) of the Revenue Act of 1924, 43 Stat. c. 234, p. 253 (26 USCA § 932).

It appears that, for a number of years prior to January 1, 1921, the two petitioners and Nikoloff conducted a business at Worcester, Mass., as partners, in which Gifford and Leland each owned a five-twelfths interest and Nikoloff two-twelfths; that the partnership was successful and accumulated a large capital surplus; that during the years of the partnership each partner reported his dis-

tributive share of the profits in his tax return and paid the tax thereon, whether such profits were distributed or not; that on January 1, 1921, the three partners organized a Massachusetts corporation under the name of Leland-Gifford Company with an authorized capital stock of $500,000, represented by 5,000 shares of a par value of $100 each; that only 4,800 shares were issued to subscribers; that Gifford and Leland subscribed for 2,000 shares each, or ten-twelfths of the stock issued, and Nikoloff subscribed for 800 shares, or two-twelfths of the stock issued; that the stock was paid for by the partners transferring to the corporation certain real estate, which included two mill buildings and about 2¼ acres of land for 1,750 shares, and machinery and equipment for 3,050 shares; that the partnership had other quick assets such as merchandise, cash, accounts receivable, securities, and the like, of the value of $861,875.48; that these assets were turned over to the corporation and were entered on its books as paid-in surplus, which was used in the business during the periods involved; that there was no formal bill of sale or conveyance of these liquid assets as there was of the land, buildings, machinery, and equipment, and no note or notes were given by the corporation evidencing the transaction.

During the year 1921 the corporation made a loss amounting to $61,360.21; in 1922 it made a profit of $266,606.97; in 1923 a profit of $210,287.37; and 1924 a profit of $19,785.86.

On December 28, 1922, the directors of the corporation passed the following resolution:

"It was voted to distribute the sum of $120,000 as a partial distribution of the paid-in surplus belonging to the company, which surplus was paid in by the original stockholders to the corporation immediately after said corporation was formed; said sum to be distributed among the stockholders in proportion to the number of shares held by them."

And on January 31, 1924, the directors passed a like resolution reading:

"It was voted to withdraw the sum of $480,000 as a partial distribution of paid-in surplus belonging to the company, which surplus was paid in by the original stockholders to the corporation immediately after said corporation was formed, said sum to be distributed among the stockholders in proportion to the number of shares held by them."

On the books of the corporation these distributions were credited to the surplus account and charged to the stockholders' accounts. Neither petitioner, in making his individual income tax returns for 1922 and 1924, returned any part of such payments. But the commissioner, after auditing their income tax returns, held that the amounts distributed in the respective years to each petitioner were dividends, and, to the extent that the corporation had current earnings, these distributions were paid out of the current earnings and were taxable to the respective petitioners for the year in which they were received.

On December 31, 1922, when the $120,000 was distributed, the earnings of the corporation then available for distribution were $205,256.76, and on December 31, 1924, when the distribution of the $480,000 was made, the earnings of the corporation available for distribution were $315,329.99.

The by-laws of the company provided that the directors could declare dividends only from the surplus profits of the corporation, that is, not from paid-in surplus, which can only be regarded as an addition to capital; and the directors, in making the distribution of $120,000 in 1922 and of the $480,000 in 1924, did not intend or understand that they were distributing dividends but were distributing a part of the paid-in surplus or capital represented by the $861,875.48 of quick assets turned over by the stockholders in January, 1921; and the question is whether, notwithstanding what the directors intended and understood they were doing, the distributions were dividends out of the net earnings or profits of the corporation on hand at the time, by force of the provisions of section 201 (a) and (b) of the Revenue Acts of 1921 and 1924.

 Section 201 (a) and (b) of the Revenue Act of 1921 (42 Stat. 228), provides:

"Sec. 201 (a) That the term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913. * * *

"(b) For the purpose of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913. * * *"

In the Revenue Act of 1924, section 201 (a), (b), 43 Stat. 254 (26 USCA § 932), provides:

"Sec. 201 (a) The term 'dividend' when used in this title * * * means any dis-

tribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

"(b) For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * : * "

While the language employed in these sections of the two acts is not exactly the same, its meaning is the same, and that is that, so long as a corporation has on hand earnings or profits accumulated since February 28, 1913, and available for distribution, every distribution made by the corporation to its stockholders is made from the most recently accumulated earnings or profits, and in effect creates a conclusive presumption that the distribution was so made.

Such was the holding in Douglas v. Edwards, 298 F. 229, 237 (2d Cir.), construing a similar provision in the Revenue Act of 1916, as amended in 1917. It was there said:

"We think it was the purpose of the statute that any distribution made to shareholders should be conclusively presumed to have been made from the most recently accumulated undivided profits or surplus, and that it was intended that the corporation should not be permitted to determine to what year or period or to what fund it would allocate such distribution."

This case was taken to the Supreme Court and is reported in 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235. In that court the decision of the Circuit Court of Appeals, as to its holding that the distribution was a dividend from earnings or profits, was not questioned. The question reviewed was whether the dividends paid in 1917 should be deemed to have been paid out of earnings of that year or out of an accumulated surplus built up in 1916 and earlier years. The Court of Appeals for the Second Circuit had held that the dividends should have been treated as paid out of the 1916 surplus earnings, at the 1916 rate. As to this the Supreme Court held that the Court of Appeals erred; that the statute required the distribution to be made out of the most recently accumulated earnings, which were the earnings of 1917, and at the 1917 rate, which was much larger than the 1916 rate, the year 1917 being the year in which the distributions were made.

It thus appears that in that case the Court of Appeals for the Second Circuit held that it was conclusively presumed that distributions made by a corporation to its shareholders, at a time when it had on hand earnings or profits accumulated since 1913, were made out of such earnings and that the distributions were dividends; and that the Supreme Court held that if, at the time the distributions were made, the corporation had on hand earnings or profits that had accumulated in the year in which the distributions were made (1917), as well as earnings and profits that had accumulated in 1916 and prior years, it was to be conclusively presumed that the distributions were from the earnings or profits of 1917, the year in which the distributions were made.

Then again, as the Leland-Gifford Company had on hand, at the time the distributions were made, earnings or profits that had accumulated since 1913, we do not think that the provisions of section 201 (c) of the Revenue Acts of 1921 and 1924 are applicable.

Nor do we think that Congress exceeded its constitutional power by providing that, so long as a corporation has on hand earnings and profits accumulated since 1913, any distribution to its stockholders should be conclusively presumed to be a dividend out of such earnings or profits. It is evident that Congress intended that a stockholder, to whom distributions were made while a corporation had earnings or profits on hand, should not escape the burdens of the income tax law through the directors of the corporation undertaking to make distributions from some other source. The statute does not convert what is not income into income. It simply requires that, while there are earnings or profits, the distributions to the stockholders shall be made from such earnings or profits, and any distributions made while such earnings or profits exist shall be deemed to have been so made.

The Board of Tax Appeals found that the paid-in surplus was not a loan to the corporation. The evidence warranted such finding. The distributions, therefore, were not payments upon a loan.

The decisions or orders of the Board of Tax Appeals are affirmed.