## LAWRENCE et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10449.

Circuit Court of Appeals, Ninth Circuit.
June 13, 1944.

V. V. Pendergrass and R. R. Bullivant, both of Portland, Or., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, Newton K. Fox, and Maryhelen Wigle, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This matter is before us on a petition to review a decision of the Tax Court of the United States determining that a deficiency of $1,147.24 exists in the income tax for 1937 of the estate of George Lawrence, deceased. The question raised is whether a dividend of $17,505 paid to the decedent by the George Lawrence Company, an Oregon corporation, was paid out of earnings of the corporation and so constituted taxable income to decedent, as the Commissioner ruled and the Tax Court held, or whether it was paid out of paid-in surplus and so was not taxable income, as petitioners contend.

The George Lawrence Company is a family corporation, the stock of which was held from 1913 through 1921 by George Lawrence, Sr., and his four children, of whom decedent was one. Beginning before 1913 and continuing through 1917 it was the practice of the corporation to carry no earned surplus account on its books. Instead an annual dividend was declared amounting to the entire net profit for the year, without any provision being made for payment of federal taxes. These dividends were not actually paid out as they were declared, but were placed to the credit of the various stockholders on the books of the company. These credit accounts were kept in a private ledger, and in addition to dividends included salaries and rent in the case of George Lawrence, Sr., and his two sons, and gifts from George Lawrence, Sr., to his four children. The stock-holders made withdrawals from their accounts according to their various needs, and not in proportion to their interests in the corporation or the size of their credit balances. One account was overdrawn for several years; the others had substantial balances that were left in the company and used by it as working capital.

The same procedure was followed as to profits for 1918, but a reversing entry was afterward made transferring to a profit and loss account the amounts which had been so credited to the various individual accounts. In addition, an entry was made, as of December 31, 1917, setting up a paid-in surplus account and transferring to it the full amounts of the credit balances of the five shareholders, $201,356.23 in all. This entry was accompanied by the following explanation entered on the books:

"The foregoing credit balances of the various members of the family,—all being stockholders of the corporation,—really being capital used in the business and left there for its uses, but not actually showing on the books as such, it was decided that a paid-in surplus account be opened thereby showing the actual intentions of the officers of the company. This entry is to be made as of December 31st 1917, and represents the total amount of the credit balances of the present stockholders and their accounts are charged with their share."

These transactions were authorized by a resolution of the directors of the corporation, dated January 5, 1920, in the following terms:

"Whereas, the matters hereinafter referred to have, from time to time, been discussed by the stockholders and directors and the actions in respect thereof approved, but

"Whereas, no formal action has heretofore been taken. Now therefore, the former ratifications are hereby confirmed and approved in the manner following.

"Whereas, it has been the custom in past years to distribute the net earnings of the company on the basis of a partnership, and

"Whereas, from time to time resolutions have been passed purporting to authorize the placing to the credit of the individual stockholders their proportionate share of such net earnings as dividends, and

"Whereas, the basis of such distribution was arrived at before taking into consideration the payment of federal taxes and other

items properly deductible therefrom before distribution, and

"Whereas, such sums were not withdrawn from the business by the individual stockholders but allowed to remain as working capital for the use and benefits of such corporation, and

"Whereas, on the 31st day of December, 1917, there appeared on the books of the company, an aggregate amount of $269,046.24 to the credit of the stockholders in respect of such accumulation of earnings,

"Now be it resolved that the following sums representing the proportionate interests of the individual stockholders in the sum of $269,046.24, towit:

| | |
|---|---|
| George Lawrence, Senior | $174,880.06 |
| George Lawrence, Junior | 53,809.25 |
| W. C. Lawrence | 13,452.31 |
| S. A. Lawrence | 13,452.31 |
| M. H. Lawrence | 13,452.31 |
| Total | $269,046.24 |

"Be and are hereby transferred to the credit of the account known as 'Paid in Surplus' and that the adjusting entries made on the books of the company as of date, December 31st, 1917, be hereby ratified and approved.

"Whereas, on the 15th day of January, 1919, with a view to distribute the net divisible income of the corporation for the year ending December 31st, 1918, a resolution was passed authorizing the placing to the credit of the individual stockholders of the company sums aggregating $101,258.92, purporting to represent a dividend of 202 51/100 for each dollar of capital stock, and

"Whereas, such distribution was computed on a partnership basis and without giving consideration to the question of federal income and excess profit taxes and other items properly deductible therefrom.

"Now be it resolved that the said resolution of the 15th day of January, 1919 be and is hereby rescinded and rendered null and void.

"Be it further resolved that the following sums placed to the credit of the respective stockholders, namely,

| | |
|---|---|
| George Lawrence, Senior | $ 65,818.29 |
| George Lawrence, Junior | 20,251.78 |
| W. C. Lawrence | 5,062.95 |
| S. A. Lawrence | 5,062.95 |
| M. H. Lawrence | 5,062.95 |
| Total | $101,258.92 |

"Be and are hereby authorized to be transferred therefrom to the credit of the Surplus Account and that the adjusting entries made on the books of the corporation as of date, December 31st, 1918, be hereby ratified and approved."

In 1937 the corporation paid out $50,000 in dividends, of which $31,007.88 was paid from earnings subsequent to December 31, 1917. Earnings subsequent to February 28, 1913, were thereby exhausted, and the remaining $18,992.12 of the 1937 dividend was paid out of the paid-in surplus account set up as previously stated. To the extent that decedent's 1937 dividend was attributable to that paid-in surplus account, petitioners did not report it was taxable income, and it is on that account that a deficiency has been found.

The Commissioner takes the position that the so-called dividends from 1913 to 1917 were not dividends in fact, to the extent that they were allowed to remain with the corporation, but were undistributed profits, first distributed in 1937 and taxable as income to the distributees at that time. The Tax Court ruled in accordance with that view.

 It is true that a dividend may be taxable to a stockholder as income when it is declared, even though it be left to his credit on the corporate books and not actually paid to him. However, it is essential that the stockholder have an absolute right of withdrawal. Compare Regulations 111, § 29.42-3, "Dividends on corporate stock are subject to tax when unqualifiedly made subject to the demand of the shareholder." Here, the Corporation's cash position was such that it could not have paid the full amount of the declared dividends without borrowing money for that purpose and for its own use as working capital. Mabel H. Lawrence, one of the shareholders, testified, "Well, I did not draw any farther than what my father thought I should draw. * * * Well, my father thought I was the younger one, you know, in the family, and he thought I should draw just so much, but later in life I was allowed to draw when I needed it." The directors' resolution, set out above, setting up the paid-in surplus account, attributed it to the several shareholders in proportion to their interests in the company and not in proportion to the amounts transferred from their respective credit balances. The transfer was effected by corporate action rather than by the shareholders individually. Mabel Law-

rence, one of the shareholders, testified that she was not consulted regarding it. These facts, the terms of the directors' resolution and the explanation entered on the corporate books all indicate that the declaration of the dividends was not regarded as terminating the corporation's control over the money. We regard the foregoing as substantial evidence in support of the Tax Court's holding that the so-called dividends left on deposit with the corporation and subsequently transferred to the paid-in surplus account were not unqualifiedly made subject to the demand of the shareholders so as to be income to them when placed to their credit on the books, but remained undistributed profits until 1937 and were taxable upon distribution in that year.

 Petitioners point out various circumstances that would suffice to support a finding to the contrary. We do not consider them. When the findings of the Tax Court are supported by substantial evidence we have no power to consider the relative weight of evidence to the contrary. Wilmington Trust Co. v. Helvering, 316 U.S. 164, 168, 62 S.Ct. 984, 86 L.Ed. 1352.

The credit balances transferred to the paid-in surplus account were derived in part from sources other than declared dividends. To the extent that they were so derived they may actually represent paid-in surplus, distribution of which would not be taxable. It is unnecessary for us to consider that question. 26 U.S.C.A.Int. Rev.Code, § 115(b) provides: "For the purposes of this act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits." Even if it should be assumed in petitioners' favor that every shareholder, in withdrawing funds from his credit balance, had drawn against his dividends to the extent thereof before drawing against his credits from other sources, still the total of undistributed dividends transferred to paid-in surplus would have amounted to more than the $18,992.12 the taxability of which is here in question. Section 115(b) requires the assumption that the dividend was paid from the profits rather than from some other element of the paid-in surplus account. The Tax Court in its opinion stated that petitioners had not overcome that statutory presumption. They not only have not but could not overcome it. The statutory presumption is conclusive. Leland v. Commissioner of Internal Revenue, 1 Cir., 50 F.2d 523, 524, certiorari denied 284 U.S. 656, 52 S.Ct. 34, 76 L.Ed. 557.

The Tax Court also stated in its opinion that petitioners had failed to overcome the presumption that respondent's determination of their tax liability was correct. That presumption disappears when, as here, evidence is introduced which would be sufficient to sustain a contrary finding. Wiget v. Becker, 8 Cir., 84 F.2d 706, 707, 708; Co-operative Publishing Co. v. Commissioner of Internal Revenue, 9 Cir., 115 F.2d 1017, 1021, 1022; cf, New York Life Ins. Co. v. Gamer, 303 U.S. 161, 171, 58 S. Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218. If it appeared that the Tax Court had relied upon the presumption to sustain its finding it would be necessary for us to reverse the case. However, the Tax Court expressly enumerated the factors which led it to conclude that the dividends were not constructively received by the shareholders. Those factors were "the relationship of the stockholders, the way in which the business was conducted, and the cash position of the business." It is apparent that the Tax Court, in stating that petitioners had not overcome the presumption in favor of respondent's determination, meant merely that they had not sustained their burden of proof. In that we find no error.

The decision of the Tax Court is affirmed.