J. Barstow Smull, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 26326. Promulgated February 28, 1952.

*John W. Matz, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

## OPINION.

HILL, *Judge:* The sole issue presented concerns the taxability of certain cash dividends received by the petitioner in the taxable year 1946. As indicated in our findings of fact, the J. H. Winchester & Co. Inc., in which petitioner is a principal shareholder, qualified as a personal service corporation for World War II excess profits tax purposes and elected not to be subject to excess profits tax for the years 1940 to 1945, inclusive.[1] Accordingly, each year Winchester's

---

[1] SEC. 725. PERSONAL SERVICE CORPORATIONS.

(a) DEFINITION.—As used in this subchapter, the term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of shareholders who are regularly engaged in the active conduct of the affairs of the corporation and are the owners at all times during the taxable year of at least 70 per centum in value of each class of stock of the corporation, and in which capital is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists of gains, profits, or income derived from trading as a principal. For the purposes of this subsection, an individual shall be

shareholders were required to include in their gross income as dividends any yearly earnings which Winchester retained in the business.[2] The Code contains certain adjustments to be made with respect to the retained earnings of a personal service corporation in arriving at the amount which the shareholders are required to report as gross income in their returns, and this adjusted amount is defined in the Code as "undistributed Supplement S net income."[3]

The Code contains other provisions which are pertinent to the income tax treatment of undistributed Supplement S net income.[4] The first of these, section 394 (d), provides that an amount equal to the undistributed Supplement S net income of a personal service corporation for its taxable year "shall be considered as paid in as of the close of such taxable year as paid-in surplus or as a contribution to capital, and the accumulated earnings and profits as of the close of such taxable year shall be correspondingly reduced, if such amount or any portion thereof is required to be included as a dividend in the gross income of the shareholders." The other pertinent provision of the

considered as owning, at any time, the stock owned at such time by his spouse or minor child or by any guardian or trustee representing them.

(b) ELECTION AS TO TAXABILITY.—If a personal service corporation signifies, in its return under Chapter 1 for any taxable year, its desire not to be subject to the tax imposed under this subchapter for such taxable year, it shall be exempt from such tax for such year, and the provisions of Supplement S of Chapter 1 shall apply to the shareholders in such corporation who were such shareholders on the last day of such taxable year of the corporation. Such corporation shall not be exempt for such year if it is a member of an affiliated group of corporations filing consolidated returns under section 141.

[2] SEC. 394. CORPORATION INCOME TAXED TO SHAREHOLDERS.

(a) GENERAL RULE.—The undistributed Supplement S net income of a personal service corporation shall be included in the gross income of the shareholders in the manner and to the extent set forth in this Supplement.

(b) AMOUNT INCLUDED IN GROSS INCOME.—Each shareholder who, on the last day of the taxable year of the corporation, was a shareholder in such corporation shall include in his gross income, as a dividend, for the taxable year in which or with which the taxable year of the corporation ends, the amount he would have received as a dividend if on such last day there had been distributed by the corporation, and received by the shareholders, an amount equal to the undistributed Supplement S net income of the corporation for its taxable year.

[3] SEC. 392. UNDISTRIBUTED SUPPLEMENT S NET INCOME.

For the purposes of this Chapter, the term "undistributed Supplement S net income" means the Supplement S net income (as defined in section 393) minus the amount of the dividends paid during the taxable year. For the purposes of this section the amount of dividends paid shall be computed in the same manner as provided in subsections (d), (e), (f), (g), and (i) of section 27 for the purpose of the basic surtax credit provided in section 27.

SEC. 393. SUPPLEMENT S NET INCOME.

For the purposes of this chapter "Supplement S net income" means the net income, except that there shall be allowed as additional deductions—

(a) The Federal income tax payable under this chapter for the taxable year ; and

(b) In lieu of the deduction allowed by section 23 (q) contributions or gifts, payment of which is made within the taxable year, to or for the use of donees described in section 23 (q) for the purposes therein specified, to an amount which does not exceed 15 per centum of the corporation's net income, computed without the benefit of this subsection and section 23 (q). For the purposes of this section, the net income shall be computed without regard to section 47 (c).

[4] Section 394 (d) and (e).

Code, section 394 (e), states that the portion of the undistributed Supplement S net income which each shareholder is required to include in his gross income "shall, for the purpose of adjusting the basis of his stock with respect to which the distribution would have been made (if it had been made), be treated as having been reinvested by the shareholder as a contribution to the capital of the corporation; * * *."

Petitioner's principal contention appears to be that the cash dividends distributed in 1946 by Winchester constituted distributions of the latter's 1945 undistributed Supplement S net income, and that since he, as a stockholder, included in his 1945 gross income his share of such undistributed Supplement S net income ($20,554.04), he should not be taxed a second time in 1946 when the corporation distributed such income.

Petitioner's brief contains two other arguments why he should not be taxed on his share of the 1946 corporate distributions. The substance of one of these appears to be that Winchester "could not" distribute its 1945 earnings to its shareholders as dividends because of the War Shipping Administration's requirement that a minimum net worth of $250,000 be maintained (Winchester's net worth as of December 31, 1945, was $295,712.39), and that, in view of this fact, to require the shareholders to include the dividends in their 1946 income would be inequitable and would constitute an unwarranted penalty. The other argument advanced was that there was a "constructive payment" of dividends in 1945 in the amount of 1945 undistributed Supplement S net income, the amount the shareholders were required to report as gross income for that year.

The petitioner's principal contention is supported by certain of the stipulated facts which indicate that (1) it was the expressed intent of Winchester's board of directors that the retained earnings were the source of the 1946 dividends, and (2) the total amount of these dividends ($97,696.45) equaled Winchester's 1945 undistributed Supplement S net income of $97,876.45, reduced by unallowable deductions and adjustments of $180.

The stipulation also indicates, however, that Winchester's 1946 earnings, after taxes and unallowable deductions and adjustments, amounted to $153,202.94, an amount far in excess of the dividends distributed in 1946. The existence of such 1946 earnings requires our consideration of section 115 (b) of the Code, which reads as follows:

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

   \*       \*       \*       \*       \*       \*       \*

(b) SOURCE OF DISTRIBUTIONS.—For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumu-

lated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113. The preceding sentence shall not apply to a distribution which is a dividend within the meaning of the last sentence of subsection (a).

The above reference in section 115 (b) to "most recently accumulated earnings or profits" includes the earnings of the year in which the distributions were made.[5] Furthermore, the requirement that for income tax purposes every distribution is made out of such most recently accumulated earnings or profits is a conclusive statutory presumption. *Leland* v. *Commissioner*, 50 F. 2d 523, affirming *Albert J. Gifford*, 18 B. T. A. 795; *Lawrence* v. *Commissioner*, 143 F. 2d 456.

We have given careful consideration to the provisions of section 115 (b) set out above, as compared with the provisions of the Code which are pertinent to the treatment of undistributed Supplement S net income for income tax purposes (section 394 (d) and (e) of the Code discussed above), and we believe that these provisions of the Code are consistent with one another, that they are correlative, and that nowhere in any of these sections which we have discussed above, nor elsewhere in the Code, does there exist any provision excepting from the operation of section 115 (b) any distributions alleged by a personal service corporation to be out of undistributed Supplement S net income. Accordingly, we believe that the issue presented herein is reduced to that presented whenever a corporation which has such earnings available for dividends as would render a distribution taxable under section 115 expressly declares that the source of its dividends is paid-in or capital surplus. In such cases it has been consistently held that in view of the language contained in section 115 (b), and similar provisions of preceding revenue laws, the expression of the directors as to the source of corporate dividends must be

---

[5] Regulations 111:

Sec. 29.115-1. DIVIDENDS.—The term "dividend" for the purpose of chapter 1 (except when used in section 201 (c) (5), section 204 (c) (11), and section 207 (a) (2) and (b) (3) where the reference is to dividends of insurance companies paid to policy holders) comprises any distribution in the ordinary course of business, even though extraordinary in amount, made by a domestic or foreign corporation to its shareholders out of either—
(1) earnings or profits accumulated since February 28, 1913, or
(2) earnings or profits of the taxable year computed without regard to the amount of the earnings or profits (whether of such year or accumulated since February 28, 1913) at the time the distribution was made.
The earnings or profits of the taxable year shall be computed as of the close of such year, without diminution by reason of any distributions made during the taxable year. For the purpose of determining whether a distribution constitutes a dividend, it is unnecessary to ascertain the amount of the earnings and profits accumulated since February 28, 1913, if the earnings and profits of the taxable year are equal to or in excess of the total amount of the distributions made within such year.
　　*　　*　　*　　*　　*　　*　　*
Cf. *Edwards* v. *Douglas*, 269 U. S. 204; *Harder* v. *Irwin*, 285 F. 402.

No

disregarded and the dividends have been held to be taxable. *Leland v. Commissioner, supra; Stanley M. Bolster*, 23 B. T. A. 347; *R. M. Walker*, 26 B. T. A. 494, appeal dismissed 74 F. 2d 1022; *Lawrence v. Commissioner, supra.*

Since we believe that in accordance with the sections of the Code discussed above the 1946 distributions in question are taxable, we deem it unnecessary to consider petitioner's alternative arguments and we hold that the respondent did not err in including in petitioner's income the dividends he received from Winchester in the year 1946.

*Decision will be entered for the respondent.*