INDUSTRIAL TRUST CO. v. WALSH, Internal Revenue Collector.

(District Court, D. Connecticut.   March 6, 1915.)

No. 1854.

INTERNAL REVENUE ☜9—EXCISE TAX ON CORPORATIONS—"NET INCOME."

> A net increase in the book value of securities held by a banking and trust company as an investment for surplus funds, as shown by an adjustment of such values entered on its books, such increase in some instances extending over a number of years, does not constitute "net income" received by the corporation during the year in which the adjustment was made, within the meaning of Corporation Tax Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (Comp. St. 1913, §§ 6300–6307), and is not subject to the excise tax thereby imposed.

> [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☜9.

> For other definitions, see Words and Phrases, First and Second Series, Net Income.]

At Law. Action by the Industrial Trust Company against James J. Walsh, Collector of Internal Revenue for the District of Connecticut. Trial to court. Judgment for plaintiff.

This case having been heard by the court without the intervention of a jury, pursuant to the provisions of sections 649 and 700 of the Revised Statutes of the United States (Comp. St. 1913, §§ 1587, 1668), the following special finding of facts is made by the court and filed as part of the record:

### Special Finding of Facts.

The plaintiff is a Rhode Island corporation, with its principal place of business located in the city of Providence, and is now and for many years has been engaged in carrying on business as a bank and trust company.

During the latter part of June, 1912, plaintiff caused an adjustment to be made on its books of the value of the securities which it then owned, with the result that a net increase in the value of such securities was shown. None of these securities, however, were sold by the plaintiff during that year, except $43,000 in par value of the Bristol & Warren Water Company's bonds; $6,000 in par value having been sold prior to the said book adjustment, and the remaining $37,000 in par value having been sold subsequent thereto.

By the book adjustment, as made, the value of that portion of the bonds representing $37,000 in par value was increased $2,804, and the gain thus made by the sale, over and above the adjusted book value, was accounted for as a profit and carried on the plaintiff's books to the profit and loss account, thereby increasing the capital worth of the corporation's assets, but having no effect on its surplus.

All of the Bristol & Warren Water Company's bonds were purchased in 1911, and the book adjustment value, made in June, 1912, was the same as the cost of the bonds in 1911, and the plaintiff included the amount realized from the sale of these bonds in its return of gross income for the year 1912.

On or about February 18, 1913, for the purpose of complying with the requirements of section 38 of the act of Congress approved August 5, 1909, entitled "An act to provide revenue, equalize duties and encourage the industries of the United States, and for other purposes," the plaintiff made out and sent a return of income for the year ending December 31, 1912, to the Commissioner of Internal Revenue on the usual form furnished for such purposes.

In the return thus filed plaintiff reported that its gross income amounted to $3,340,631.02, and that all deductions allowed by the act amounted to $3,094,558.50, so that its net income was $246,072.52, from which the specific statutory deduction of $5,000 was taken, thus leaving, as the amount on which the tax of 1 per centum was to be calculated for assessment, the sum of $241,072.52. The tax amounted to $2,410.73, and the plaintiff paid it.

Subsequently the Commissioner of Internal Revenue amended this return in two particulars. He first increased the return of net income by adding to the return as filed by the plaintiff the sum of $180,307.90, thus showing an amended gross income of $3,520,938.92. The addition of $180,307.90 to the gross income represented what the Commissioner termed a prorated increase in the value of certain securities owned by plaintiff, after deducting a prorated decrease in the value of certain other securities, both of which were computed in consequence of the adjustment plaintiff made of book values in June, 1912. The tax on this addition to gross income amounted to $1,803.07, and is the subject of this suit.

After increasing the gross income, the Commissioner then disallowed a certain deduction made by the plaintiff in its original return. The total claimed deductions in the original return filed by plaintiff amounted to $3,094,558.50. In the amended return the Commissioner disallowed the sum of $22,270.47, so that the total deductions allowed amounted to $3,072,288.03. The sum disallowed represented the cost of certain improvements made by the plaintiff on its real property. Of this action of the Commissioner the plaintiff does not complain, and for the additional tax imposed as the result of disallowing this deduction, amounting to $222.71, the plaintiff brings no suit, the amount having been paid when it paid the total additional tax assessed, which, as

stated, amounted to $2,025.78. The sum of that amount, to wit, $222.71 and $1,803.07, for which suit was brought, represents the total additional tax paid on September 26, 1913. Due notice was given by the Commissioner to the plaintiff of these changes.

On September 17, 1913, defendant gave plaintiff written notice of this change, and made demand for the payment of the additional tax thus assessed, at the same time advising plaintiff that, unless said additional tax was paid within 10 days thereafter, suit would be brought for the recovery of the amount and the penalties imposed as provided in the act.

The Commissioner estimated that the total increase in the value of certain securities owned by the plaintiff and applicable to plaintiff's 1912 income was $283,762.29, and that the decrease deductible in the same year for the decrease in value of certain other securities was $103,454.39, leaving a net prorated increase of $180,307.90, and added this amount to the gross income as originally filed by the plaintiff. The Commissioner claimed that these respective amounts represented a prorating of the amount of net increase and net decrease in the value of the securities thus entered on the company's books.

The Commissioner claimed that the amount added by him to plaintiff's gross income was properly chargeable because the plaintiff had entered the increase in value on its books during that year, notwithstanding that the increase in value represented a continuous increase extending over the years 1909, 1910, 1911, and 1912, during which time the act in question was in force.

Had plaintiff not adjusted the value of its securities on its books during 1912, the additional tax would not have been assessed against it by the Commissioner on plaintiff's income for 1912.

In ascertaining the amount of the increased value of each security the Commissioner laid down the following rule: He first ascertained the difference between the cost price of the security and the adjusted book value made in 1912, and then divided the increase thus shown by the number of years intervening since the last book adjustment, including the year the adjustment was made and the year 1912; no notice having been taken of fractional parts of a year. This, he claimed, gave the proportionate increase for one year. He then multiplied that amount by 4, which was the number of years the act had been in force at that time; the figures resulting therefrom being, as he termed it, "the proportion of increase applicable to gross income for 1912." Where a security was purchased since the last book adjustment, the Commissioner in that case first ascertained the number of years the plaintiff had owned the security (including both the year of purchase and the year of 1912, no notice having been taken of fractional parts of a year) and used the number of such years as the denominator of the fraction, and the number of years the act had been in force at that time, which was 4, as the numerator of the fraction, and divided the increase so shown by the denominator and multiplied the result by the numerator, and the answer represented a sum which he called "the proportion of increase applicable to gross income for 1912."

On September 26, 1913, in consequence of the defendant's demand and threat of suit for collection of the tax and penalties, plaintiff paid under protest to defendant, as collector of internal revenue, the sum of $2,025.78, in payment of the extra tax so assessed.

On the 29th day of December, 1913, plaintiff took an appeal in writing to the Commissioner of Internal Revenue, demanding repayment of the sum of $1,803.07 of the $2,025.78 so paid, on the ground that so much of the tax thus paid resulted from the illegal assessment of 1 per centum on the net increase in the book value of the securities in question.

On or about January 5, 1914, the Commissioner of Internal Revenue rejected said appeal and refused to order the return of any part of the additional tax, and no part of said sum has ever been returned.

Plaintiff does not, as a business, buy and sell securities as commodities, but purchases securities as an investment for surplus funds, and sells the same when, in the opinion of its proper officers, such sale will prove conducive to the best interest of its business as a bank and trust company.

In finding the foregoing facts the court has excluded from consideration

two letters marked Exhibits H and I, which were letters written by the Commissioner of Internal Revenue, addressed to the collectors of internal revenue and revenue agents. At the time of trial they were admitted in evidence over the objection of counsel for defendant. I have since concluded that these exhibits were not properly admitted.

William Waldo Hyde, of Hartford, Conn., and C. M. Van Slyck, of Providence, R. I., for plaintiff.

Frederick A. Scott, U. S. Dist. Atty., of Hartford, Conn., for defendant.

THOMAS, District Judge (after stating the facts as above). This is an action brought by the plaintiff against the defendant to recover the sum of $1,803.07, which amount is the greater portion of an additional tax assessed against the defendant, and is claimed by the Commissioner of Internal Revenue to have been assessed in accordance with the provisions of section 38 of an act of Congress approved August 5, 1909, entitled "An act to provide revenue, equalize duties and encourage the industries of the United States, and for other purposes."

The assessment of the additional tax is based upon the net increase of book values of the securities which plaintiff owned, as shown by an adjustment of such values made by the plaintiff and entered on its books in the latter part of June, 1912. The plaintiff claims that the tax was illegally assessed. The defendant contends that any increase in the value of the capital assets of a corporation, as determined by a physical revaluation thereof and taken cognizance of by the corporation in book entries, is "income," as defined and measured by the Corporation Tax Law of 1909.

The case was tried to the court without the intervention of a jury, in accordance with a stipulation of counsel in writing filed on September 28, 1914, and as provided by sections 649 and 700 of the Revised Statutes of the United States.

Pursuant to the provisions of the statute a special finding of facts has been made by the court and filed with the clerk.

The plaintiff is a Rhode Island corporation, and at the time of hearing this case was, and for many years had been, engaged in carrying on business as a bank and trust company, with its banking house and principal place of business located in the city of Providence.

In June, 1912, plaintiff made an adjustment on its books of the values of the securities it then owned, which resulted in a net increase in the value of such securities amounting to $180,307.90.

None of these securities, however, were sold by plaintiff during that year, excepting $43,000, par value, of the Bristol & Warren Water Company's bonds, of which $6,000, par value, was sold prior to said book adjustment, and the remaining $37,000, par value, subsequent thereto. By the book adjustment, the value of the securities representing $37,000, par value, was increased $2,804, and the gain thereon by the sale, over and above the adjusted book value, was accounted for as profit and carried to the profit and loss account on plaintiff's books, thereafter showing an increase in the capital worth of the corporation's assets, but having no effect on plaintiff's surplus.

The securities thus sold were purchased during the year 1911, and

the book value adjustment made in June, 1912, was the same as the 1911 cost of the securities. Plaintiff included the amount realized from the sale of these securities in the return which it originally made to the Commissioner of Internal Revenue of gross income for the year 1912, which was filed with the defendant, as collector of internal revenue, on or about February 18, 1913, for the purpose of complying with the provisions of the act of Congress now under consideration. In the return thus filed plaintiff reported that its gross income amounted to $3,340,631.02, and that all deductions allowed by the act amounted to $3,094,558.50, so that its net income was $246,072.52, from which the specific statutory deduction of $5,000 was taken, thus leaving, as the amount on which the tax of 1 per centum was to be calculated for assessment, the sum of $241,072.52. The tax amounted to $2,410.73, and the plaintiff paid it.

Subsequently the Commissioner of Internal Revenue amended this return in two particulars. He first increased the return of net income, by adding to the return as filed by the plaintiff the sum of $180,307.90, thus showing an amended gross income of $3,520,938.92. The addition of $180,307.90 to the gross income represented what the Commissioner termed a prorated increase in the value of certain securities owned by plaintiff after deducting a prorated decrease in the value of certain other securities, both of which were computed in consequence of the adjustment plaintiff made of book values in June, 1912. The tax on this addition to gross income amounted to $1,803.07, and is the subject of this suit.

After increasing the gross income, the Commissioner then disallowed a certain deduction made by the plaintiff in its original return. The total claimed deductions in the original return by plaintiff amounted to $3,094,558.50. In the amended return the Commissioner disallowed the sum of $22,270.47, so that the total deductions allowed amounted to $3,072,288.03. The sum thus disallowed represented the cost of certain improvements made by the plaintiff on its real property. With this action of the Commissioner the plaintiff does not complain, and for the additional tax imposed as the result of disallowing this deduction, amounting to $222.71, the plaintiff brings no suit; the amount having been paid when it paid the total additional tax assessed, which, as stated, amounted to $2,025.78. The sum of that amount, to wit, $222.71, and $1,803.07, for which suit was brought, represents the total additional tax paid on September 26, 1913. Due notice was given by the Commissioner to the plaintiff of these changes.

On September 17, 1913, defendant thereupon made demand for the payment of the additional tax thus assessed, and notified the plaintiff in writing that, unless such tax was paid within 10 days thereafter, suit would be brought to recover the additional tax and such penalties imposed as were stated in the act, in case the plaintiff failed to make such payment.

In consequence of defendant's demand and threat of suit the plaintiff did on the 26th day of September, 1913, pay under protest to the defendant, as collector, the sum of $2,025.78, in payment of the additional tax assessed. On December 29, 1913, the plaintiff took an ap-

peal, in writing, to the Commissioner of Internal Revenue, and demanded repayment of $1,803.07 thereof, on the ground that so much of the tax, so paid, resulted from the illegal assessment of 1 per cent. upon the net increase in the book value of plaintiff's securities, as shown by the adjustment made on its books in June, 1912.

The Commissioner claimed that the amount added by him to plaintiff's gross income return was properly chargeable thereto; notwithstanding the fact that the increase in values which plaintiff thus entered upon its books in June, 1912, represented a continuous increase in values extending over the years 1909, 1910, 1911, and 1912, during which time the act in question was in force. It was also admitted by defendant that, had plaintiff not adjusted the value of its securities on its books during 1912, the additional tax would not have been assessed against it by the Commissioner on its income for that year.

In ascertaining the amount of the increased value of each security the Commissioner laid down the following rule: He first ascertained the difference between the cost price of the security and the adjusted book value made in 1912, and then divided the increase thus shown by the number of years intervening since the last book adjustment, including the year the adjustment was made and the year 1912; no notice having been taken of fractional parts of a year. This, he claimed, gave the proportionate increase for one year. He then multiplied that amount by 4, which was the number of years the act had been in force at that time, the figures resulting therefrom being, as he termed it, "the proportion of increase applicable to gross income for 1912." Where a security was purchased since the last book adjustment, the Commissioner in that case first ascertained the number of years the plaintiff had owned the security (including both the year of purchase and the year of 1912, no notice having been taken of fractional parts of a year), and used the number of such years as the denominator of the fraction, and the number of years the act had been in force at that time, which was 4, as the numerator of the fraction, and divided the increase so shown by the denominator, and multiplied the result by the numerator, and the answer represented a sum which he called "the proportion of increase applicable to gross income for 1912."

On or about January 5, 1914, the Commissioner of Internal Revenue rejected plaintiff's appeal and refused to order the repayment of any portion of said tax, and no portion thereof was ever returned to the plaintiff.

Plaintiff is not engaged in the business of buying and selling securities as commodities, but as an investment for surplus funds, and makes sales of the same only when in the opinion of its proper officers, such sales will prove conducive to the best interests of its business as a bank and trust company.

Therefore the sole question in this case is whether the Commissioner was legally justified in assessing the tax of 1 per cent. provided for in the act, on the net increase in value of the securities as shown by the book adjustment made by the plaintiff in June, 1912, and, as bearing upon that question, whether the increase in book value of such securities should be considered as "income received by plaintiff during the year."

As a guide in answering this question reference is made to the Act of March 2, 1867, c. 169, 14 Stat. 477, and the decisions following its passage. That act provided that:

"There shall be levied, collected and paid annually upon the gains, profits, and income of every person, * * * whether derived from any kind of property, rents, interest, dividends, or salaries, or from any other source whatever, a tax of five per centum on the amount so derived over $1,000, * * * and the tax herein provided for shall be assessed, collected, and paid upon the gains, profits, and income for the year ending the 31st of December next preceding the time for levying, collecting, and paying said tax."

And further that:

"In estimating the gains, profits, and income of any person, there shall be included all incomes derived from interest upon notes, bonds, and other securities of the United States, profits realized within the year from sales of real estate purchased within the year, or within two years previous to the year for which income is estimated, * * * and all other gains, profits, and income derived from any source whatever."

Subsequent to the enactment of 1867, Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, was decided by the Supreme Court and must, in my opinion, be decisive of this case. There the plaintiff was assessed, and paid under protest, the tax levied on an advance in the value of securities, and then brought suit to recover the amount paid.

In that case the plaintiff, in 1865, was the owner of certain United States treasury notes which he exchanged for United States bonds. In 1869 he sold the bonds at an advance of $20,000 over the cost of the treasury notes, and the government levied on this advance the tax provided by the act as a "gain," "profit," or "income" for the year in which the plaintiff sold the bonds.

At this point it should be noted that in the act of 1867 Congress made use of the terms "gains," "profits," and "income," while in the act now under consideration the term "net income" alone has been used upon which to assess the tax, and that further wording of the present act restricts the levy thereof to "the entire net income, over and above five thousand dollars, received * * * from all sources during such year. * * *" Therefore the act of 1867 would appear, upon its face, to be much broader in its scope, so far as it concerns the taxing of what may be considered "income," than the act of 1909.

Nevertheless, the Supreme Court of the United States, speaking by Justice Field, in Gray v. Darlington, supra, said on page 66 of 15 Wall. (21 L. Ed. 45):

"The mere fact that property has advanced in value between the date of its acquisition and sale does not authorize the imposition of the tax on the amount of the advance. Mere advance in value in no sense constitutes the gains, profits, or income specified by the statute. It constitutes and can be treated merely as increase of capital."

And on page 65 of 15 Wall. (21 L. Ed. 45), that:

"The advance in the value of property during a series of years can, in no just sense, be considered the gains, profits, or income of any one particular year of the series, although the entire amount of the advance be at one time turned into money by a sale of the property."

After careful consideration of the facts in this case and the close analogy they bear to the facts in Gray v. Darlington, supra, I must conclude that the same interpretation given to the statute of 1867 by the Supreme Court, with reference to what was taxable as income under that statute, must be given to the act of 1909.

In arriving at this conclusion, I have not taken into consideration Exhibits H and I, which were allowed in evidence over the objection of counsel for defendant. After due reflection I have concluded that both exhibits were inadmissible and had no bearing upon the controversy.

Judgment is rendered for the plaintiff to recover of the defendant $1,803.07, with interest from September 26, 1913, and its costs of suit.

Decree accordingly.