Loíza Sugar Company, Plaintiff and Appellee, *v.* Juan G. Gallardo, etc., substituted by Manuel V. Domenech, Treasurer of Puerto Rico, Defendant and Appellant.

No. 5400.   Argued February 3, 1932.—Decided February 17, 1933.

*Charles E. Winter, Attorney General, A. Ortiz Toro,* and *M. Rodrí-guez Serra, Assistant Attorneys General,* for appellant. *Jaime Sifre, Jr.,* and *Horacio Franceschi* for appellee.

Mr. Justice Aldrey delivered the opinion of the Court.

This appeal has been taken by the Treasurer of Puerto Rico from a judgment which ordered him to return to Loíza Sugar Co., a domestic corporation, the sum paid by the latter under protest as income tax.

On September 30, 1918, the appellee filed with the Treasurer of Puerto Rico, in accordance with the Federal Income Tax Act of 1916, a return for the year beginning August 1, 1917, and ending July 31, 1918, without including any deduction for depreciation of its property, but the Treasurer *motu proprio* fixed the sum of $104,220.04 for this purpose and with this deduction determined the net taxable income at $254,866.47, on which he assessed the tax of $5,097.33, which the corporation paid, according to receipt No. 21.   Said return was marked No. 41.

On August 31, 1918, for the purposes of the tax on additional income under Insular Act No. 59 of December 4, 1917, the corporation filed its return for the same period of time mentioned above, and an income tax of $8,674.66 was assessed to it on the basis of a net taxable income which, after deducting the sum of $104,220.04 for depreciation, amounted to

$254,866.47. The $8,674.66 was paid in full, according to receipt No. 46.

The Treasury Department, acting in accordance with Act No. 80 of our Legislature, of June 26, 1919, assessed to the corporation, for the fiscal year of August 1, 1917 to July 31, 1918, an income tax amounting to $7,718.71, upon return No. 41 mentioned above, taking as a basis the net income of $254,866.47, after deducting the said sum of $104,220.04 for depreciation. The tax thus assessed was affirmed on appeal by the Board of Review and Equalization, and was paid, as appears from receipt 21 (a), the amount paid under receipt No. 21 having been credited on account of said tax.

In May, 1923, the Treasury Department proceeded to amend and readjust the income taxes assessed to the appellee corporation for the said period, from August 1, 1917 to July 31, 1918, as a result of an investigation of the books of the corporation, and, without taking into account the sum of $104,220.04 deducted for depreciation, it assessed a tax of $17,623.96, from which the sum of $7,718.71 paid under receipts 21 and 21(a) was deducted; and it demanded payment of the difference amounting to $9,905.25. On appeal from this assessment, the Board of Review and Equalization decided to reduce the $9,905.25 to $6,866.37. The Board rejected the item of $104,220.04 as a reserve for depreciation because it was not charged off in the books of the corporation against the value of the property subject to depreciation or, failing this, carried to a reserve account for the same purpose. In accordance with this decision of the Board, the Treasury Department determined the tax upon a net income of $364,007.64, without deducting any sum for depreciation due to use, exhaustion, wear, and tear of the property of the corporation. It fixed the amount of the tax at $14,585.08 and, deducting the sum of $7,718.71 paid under receipts 21 and 21(a), it demanded payment of the balance amounting to $6,866.37, which the corporation paid under protest, together with $163 for surcharges.

The sum fixed for depreciation is admitted by the parties to be reasonable. The difference existing between the net income of $364,007.64, computed by the Treasurer and the Board of Review and Equalization, and that of $259,787.60 alleged by the corporation, consists of the $104,220.04 for depreciation which was not deducted in the last tax assessment. The $14,585.08 assessed as a tax was paid by means of the receipts numbered 21 and 21(a), plus $6,866.37 paid under protest.

The books of the corporation for the fiscal year 1917–1918 do not contain any account entitled "Reserve for Depreciation," nor was the depreciation charged directly to the property account; but on August 31, 1918, and by virtue of a resolution of the board of directors of the corporation at a meeting held on August 20, 1918, an amount was set aside, under profit and loss, as a fund for operations, in which was included a 10 per cent charge for depreciation of the factory, of a warehouse, of the tracks and rolling stock, of the equipment, of the cattle, and of a steel bridge, amounting to $104,220.04.

The only controversy between the parties is as to whether the $104,220.04 which the Treasurer voluntarily allowed for depreciation in the first return presented to him and also in others, and which the Board of Review and Equalization accepted on the first appeal before it, should not be taken into account and deducted in order to determine the net taxable income, on the ground that it was not charged off by the corporation or eliminated on its books or credited to a reserve account. That is the controversy involved in the five errors assigned by the Treasurer on this appeal.

Section 26 of Act No. 80 of 1919 (Session Laws, p. 612), enacted by our Legislature to provide revenues for the People of Puerto Rico, prescribe that in computing the net taxable income there shall be admitted, among other deductions, a reasonable allowance for exhaustion, wear, and tear of property used in the business or industry. Section 33 of the act

authorizes the Treasurer of Puerto Rico to issue rules and regulations for putting it into effect, and provides that, pending their promulgation, the rules and regulations in force for the administration of the Federal Income Tax Act, of September 8, 1916, as amended on October 3, 1917, shall remain in force.

The said regulations provide, as a prerequisite for admitting the deduction for depreciation, that it be charged off or eliminated on the books of the taxpayer during the year, so that it constitutes a liability against the assets of the corporation which should be reflected in the annual balance sheet. Sections 129 and 130 of the Federal regulations and section 33 of the revised rules, applicable to the said year.

Although the appellee did not charge off on his books the item of $104,220.04 for depreciation of its property in the manner required by the Federal regulations, but carried it in an account called profit and loss, it is entitled, nevertheless, to have the said item deducted in fixing the net taxable income, since it is the real facts, rather than book entries, which form the basis of the right to the deduction. We take the following from the case of *Chattanooga Sav. Bank* v. *Brewer*, 9 F. (2d) 982:

"Real facts, rather than record resolutions, give rise to income. Resolutions of directors, after all, are no more than evidential. *Doyle* v. *Mitchell*, 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054 (T. D. 2723); *Southern Pac. R. Co.* v. *Muenter*, 260 F. 837, 171 C.C.A. 563 (T. D. 2944); *Douglas* v. *Edwards* (C.C.A.) 298 F. 229. In other words, the government is not precluded from going behind the corporation's books and assessing the tax upon the basis of actual facts. If the distribution of the money by Mr. Key in 1920 was a distribution at all, as distinguished from a loan, then it by the very terms of the act of 1918—section 201, subsec. (a)— was conclusively presumed to be taxable for 1920, and this because it was not the policy of Congress, as pointed out in the cases of *Harder* v. *Irwin* (D.C.) 285 F. 402 (T. D. 3420), and *Douglas* v. *Edwards* (C.C.A.) 298 F. 237, to allow taxpayers by means of bookkeeping or otherwise to determine for themselves to what year such distribution should be allocated."

540

In *Haugh & Keenan Storage & Transfer Co.* v. *Heiner,* 20 F. (2d) 921, the court said:

"The government proceeded on the theory that because the books and records of the plaintiff did not disclose depreciation provided for in a certain way, or according to a certain rule, therefore it must be presumed that depreciation was not provided for at all. Taxes are not laid and collected on theory, but on a situation actually existing, as the facts may show that situation to be. Theory is applied in the absence of such facts. The question of taxation is one of fact, and cannot turn on theories or fiction. *In re Curtis,* 142 N. Y. 219, 36, N. E. 887; *Swift's Estate,* 137 N. Y. 77, 32 N. E. 1096, 18 L.R.A. 709.

"It has been held, and is clearly the law, that books of account are not evidential, neither indispensable nor conclusive. Facts, and bookkeeping entries, give rise to taxable income. *Doyle* v. *Mitchell Bros. Co.* 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054; *Southern Pacific Railroad* v. *Muenter* (C.C.A.) 260 F. 837; *Baldwin Locomotive Works* v. *McCoach* (C.C.A.) 221 F. 59. The decisions have uniformly held that under the excise tax law, and income tax law, no claim for taxes can rest on mere bookkeeping. *Forty-Fort Coal Company* v. *Kirkendall* (C.C.) 233 F. 704; *Industrial Trust Company* v. *Walsh* (D.C.) 222 F. 437; and other cases."

In the case of *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179, somewhat similar to the instant case, the Supreme Court of the United States, referring to the books of account of a taxpayer, said the following:

"Their increased value since purchase, as that value stood on December 31, 1908, was not in any proper sense the result of the operation and management of the business or property of the corporation while the act was in force. Nor is the result altered by the mere fact that the increment of value had not been entered upon plaintiff's books of account. Such books are no more than evidential, being neither indispensable nor conclusive. The decision must rest upon the actual facts, which in the present case are not in dispute."

The theory maintained in the cases cited above is also found in the treatise "Depreciation, Principles and Applications" by Earl A. Saliers, professor of Yale University, wherein the following is said, at page 502:

"Reduction in the value of property due to exhaustion, wear, and tear through use in trade or business is an actual fact, whether or not evidenced by book entries.

"An allowance for depreciation and obsolescence must, however, be charged off by the taxpayer in his books and records in order to constitute an allowable deduction from gross income. The manner in which it is charged off is not material, except that the amount measuring a reasonable allowance for depreciation must either be deducted directly from the book value of the property or preferably credited to a depreciation reserve account, which should be reflected in the taxpayer's annual balance sheet. The allowance should be computed and charged off with express reference to specific items, units, or groups of property, and taxpayers should keep such records as may be readily verified.

"The statement in the preceding paragraph to the effect that the depreciation allowance must be charged off before it can be deducted does not mean that depreciation sustained during one year may be charged out of the income of another year for income tax purposes; neither does it mean that failure to deduct depreciation before closing accounts for the year will prevent its ultimate deduction by the taxpayer. It means that if the taxpayer inadvertently neglected to make the proper entries on his books before closing them for the year during which the depreciation was sustained, and failed to make the proper deduction from gross income in his return for that year, he may reopen his books, make the proper adjustment entries on them, and file an amended return showing the proper deduction for depreciation, provided bad faith or gross negligence was not shown in the preparation of his original return and in the manner in which he kept his accounts."

The appellee did not call the account in which is carried the depreciation a "Reserve Account," nor did it charge it directly to the property account, but it carried the depreciation in a special account called "Operating Account," the effect of which was to charge the depreciation to the gross income, giving the same result as if it had been expressly carried to a reserve account. The government cannot invent income on the basis of errors in the manner in which the taxpayer carries his books, as the determination of the net taxable income rests on actual facts and not on theories, technicalities, or bookkeeping entries.

542

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.