Loíza Sugar Company, demandante y apelada, *v.* Juan G. Gallardo, Tesorero de Puerto Rico, sustituído por Manuel V. Domenech, demandado y apelante.

No. 5400.—*Sometido:* Febrero 3, 1932. *Resuelto:* Febrero 17, 1933.

*Procurador General Charles E. Winter, A. Ortiz Toro y M. Rodríguez Serra, Procuradores Generales Auxiliares,* abogados del apelante; *Jaime Sifre, Jr., y Horacio Franceschi,* abogados de la apelada.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

Esta apelación ha sido interpuesta por el Tesorero de Puerto Rico contra la sentencia que lo condena a devolver a la corporación doméstica Loíza Sugar Co. la cantidad que ésta pagó bajo protesta por determinada contribución sobre ingresos.

En 30 de septiembre de 1918 la apelada presentó al Tesorero de Puerto Rico, de acuerdo con la ley federal de 1916 para contribuciones sobre ingresos, una planilla por el año comprendido desde el 1 de agosto de 1917 al 31 de julio de 1918 sin consignar en ella cantidad alguna por depreciación de sus propiedades pero el Tesorero *motu proprio* fijó por ese concepto la cantidad de $104,220.04 y con esa deducción encontró como ingreso neto tributable la cantidad de $254,866.47 sobre la cual impuso la contribución de $5,097.33

que la corporación pagó según el recibo No. 21. Esa planilla fué marcada con el No. 41.

El 31 de agosto de 1918 y a los efectos de la contribución sobre ingresos adicionales según la Ley Insular No. 59 de 4 de diciembre de 1917 la corporación rindió su declaración de ingresos por el mismo período de tiempo antes referido y le fué impuesta contribución sobre ingresos en cantidad de $8,674.66 sirviendo como base para ella el ingreso neto tributable de $254,866.47 para el que se habían deducido los $104,220.04 de depreciación. Los $8,674.66 fueron pagados en su totalidad según el recibo No. 46.

Actuando el Departamento de Hacienda de acuerdo con la Ley No. 80 de nuestra Legislatura de 26 de junio de 1919 y por el año económico de 1 de agosto de 1917 a 31 de julio de 1918, impuso a la corporación una contribución sobre ingresos ascendente a $7,718.71 sobre la misma planilla No. 41 al principio mencionada, tomando como base el ingreso neto de $254,866.47 para el que concedió como depreciación la suma mencionada de $104,220.04. Esa contribución así impuesta fué confirmada en alzada por la Junta de Revisión e Igualamiento y fué pagada según el recibo 21(a), habiéndose abonado a cuenta de ella lo pagado por el recibo No. 21.

En mayo de 1923 el Departamento de Hacienda procedió a enmendar y a reajustar las contribuciones sobre ingresos impuestas a la corporación apelada por el mismo año que las anteriores, 1 de agosto de 1917 a 31 de julio de 1918, como resultado de una investigación practicada en los libros de la corporación, y sin tener en cuenta los $104,220.04 que se deducían para depreciación impuso como contribución la cantidad de $17,623.96, de la que dedujo $7,718.71 pagados por los recibos 21 y 21(a) y exigió el pago de la diferencia montante a $9,905.25. La alzada contra esa imposición la resolvió la Junta de Revisión e Igualamiento reduciendo los $9,905.25 a $6,866.37, habiendo rechazado dicha junta la partida de $104,220.04 de reserva para depreciación por no haber sido cargada en los libros de la corporación contra el

valor de las propiedades objeto de la depreciación o en su defecto llevada a una cuenta de reserva para dicho fin. De acuerdo con esa resolución de la demandante el Departamento de Hacienda liquidó la contribución bajo el ingreso neto de $364,007.64, sin deducir de él cantidad alguna en concepto de depreciación por el uso, agotamiento, deterioro y desgaste de la propiedad de la corporación y encontró como importe de la contribución la cantidad de $14,585.08 y deduciendo de ella los $7,718.71 pagados por los recibos 21 y 21(a) reclamó el pago del saldo ascendente a $6,866.37 que la corporación satisfizo bajo protesta con $163 de recargos.

Se reconoce por las partes la razonabilidad de la cantidad fijada para depreciación. La diferencia existente entre el ingreso neto de $364,007.64 computado por el Tesorero y la Junta de Revisión e Igualamiento y el de $259,787.60 que alega ser la corporación consiste en los $104,220.04 de depreciación que no se han descontado en la última imposición de contribuciones. Los $14,585.08 impuestos como contribución fueron pagados con los recibos 21 y 21(a) más $6,866.37 pagados bajo protesta.

En los libros de contabilidad de la corporación para el año económico de 1917 a 1918 no existía cuenta alguna titulada "Reserva para Depreciación" ni la depreciación fué abonada directamente a la cuenta de las propiedades, pero con fecha 31 de agosto de 1918 y en virtud de acuerdo tomado por la directiva de la corporación en junta celebrada en 20 de agosto de 1918 se consignó en ganancias y pérdidas una cantidad para un fondo de explotación en la que está incluído un 10 por ciento por depreciación de la factoría, de un almacén, de las vías y material rodante, del mobiliario, del ganado y de un puente de acero con una suma de $104,220.04.

La única controversia entre las partes es si los $104,220.04 que el Tesorero consignó voluntariamente como depreciación en la primera planilla que le fué presentada y también en otras y que la Junta de Revisión e Igualamiento aceptó en la primera alzada ante ella no debe ser tenida en cuenta y

deducida para el ingreso neto tributable por el hecho de que tal depreciación no fué cargada por la corporación o eliminada de sus libros o abonada a una cuenta de reserva. Esa es la controversia envuelta en los cinco motivos de error alegados por el Tesorero en esta apelación.

La Ley No. 80 de 1919, pág. 613 de lás de ese año, promulgada por nuestra legislatura para proveer rentas para El Pueblo de Puerto Rico dispone en su sección 26 que al computarse el ingreso neto tributable se admitirá, entre otras deducciones, una concesión razonable por el agotamiento, desgaste y deterioro de propiedad empleada en el negocio o industria. Esa ley autoriza en su sección 33 al Tesorero de Puerto Rico para dictar reglas y reglamentos al objeto de ponerla en vigor y dispone que mientras son promulgados permanecerán en vigor las reglas y reglamentos que rigen para la administración de la ley federal de 8 de septiembre de 1916 como fué enmendada en 3 de octubre de 1917 sobre contribuciones por ingresos.

Esos reglamentos disponen como requisito para admitir la deducción por concepto de depreciación que ésta sea cargada o eliminada en los libros del contribuyente durante el año de modo que constituya una obligación contra el activo de la corporación, debiendo reflejarse en el balance anual. Artículos 129 y 130 de los reglamentos federales y 33 revisado, aplicables a dicho año.

Aunque la corporación apelada no consignara en sus libros los $104,220.04 para depreciación de sus propiedades en la forma requerida por los reglamentos federales sino en una cuenta llamada de ganancias y pérdidas, no obstante, tiene derecho a que dicha cantidad sea deducida para fijar el ingreso neto sobre el cual la contribución sobre ingreso debe ser impuesta, pues hechos verdaderos más bien que constancias de los libros son los que dan derecho a la deducción. Tomamos del caso de *Chattanooga Sav. Bank* v. *Brewer,* 9 Fed. (2d) 982, lo siguiente:

"Hechos ciertos, más bien que resoluciones en los libros, dan lugar

al ingreso. Después de todo los acuerdos de los directores no consti-
tuyen otra cosa que evidencia. Doyle v. Mitchell, 247 U.S. 179, 38
S. Ct. 467, 62 L. Ed. 1054 (T. D. 2723; Southern Pac. R. C. v.
Muenter, 260 F. 837, 171 C.C.A. 563 (T.D. 2944); Douglas v.
Edwards (C.C.A.) 298 F. 229. En otras palabras, el gobierno no
está impedido de apartarse de los libros de la corporación e imponer
el tributo sobre la base de los verdaderos hechos. Si la distribución
del dinero que hizo el Sr. Key en 1920 era tal distribución, y no un
préstamo, entonces por virtud de los términos de la ley de 1918—
artículo 201, inciso (a)—se presumía concluyentemente que era im-
ponible para 1920; y esto es así porque no fué la política del Con-
greso, según se indica en los casos de Harder v. Irwin (D. C.) 285 F.
402 (T. D.) 3420, y Douglas v. Edwards (C.C.A.) 298 F. 237, dejar
que los contribuyentes, valiéndose de su contabilidad o en alguna
otra forma, determinaran por sí mismos a qué año habría de asig-
narse la contribución.''

En el de *Haugh & Keenan Storage & Transfer Co. v.
Heiner,* 20 Fed. (2d) 921, se declaró lo que sigue:

''El gobierno actuó sobre la teoría de que toda vez que los libros
y constancias de la demandante no revelaban depreciación alguna
consignada en forma específica, ni de acuerdo con determinada regla,
debía presumirse que la depreciación no fué provista en absoluto.
Las contribuciones no se imponen y cobran en teoría sino a base de
la situación existente, según los hechos la revelen. La teoría se
aplica en ausencia de esos hechos. La cuestión de tributación es
una de hecho y no puede depender de teorías o ficciones. *In re*
Curtis, 142 N. Y. 219, 36 N. E. 887; Swift's Estate, 137 N. Y. 77,
32 N. E. 1096, 18 L.R.A. 709.

''Se ha resuelto, y claramente ésa es la ley, que los libros de con-
tabilidad no constituyen evidencia, ni indispensable ni concluyente.
Hechos, y no asientos en los libros, dan lugar al ingreso imponible.
Doyle v. Mitchell Bros. Co., 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed.
1054; Southern Pacific Railroad v. Muenter (C.C.A.) 260 F. 837;
Baldwin Locomotive Works v. McCoach (C.C.A.) 221 F. 59. Las
decisiones han resuelto uniformemente que bajo las leyes de arbitrios
y de contribuciones sobre ingresos no pueden reclamarse contribucio-
nes sobre la base de mera contabilidad. Forty-Fort Coal Company
v. Kirkendall (D.C.) 233 F. 704; Industrial Trust Company v. Walsh
(D. C.) 222 F. 437, y otros casos.''

En el caso de *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179,

algo similar al presente, la Corte Suprema de los Estados Unidos dijo, refiriéndose a los libros de las operaciones de un contribuyente, lo que sigue:

"Su aumento en valor desde que fueron comprados, tal como ese valor era en diciembre 31, 1908, no fué en ningún sentido adecuado el resultado del funcionamiento y dirección del negocio o propiedad de la corporación mientras regía la ley. Tampoco varía el resultado por el mero hecho de que el anterior incremento en valor no había sido ingresado en los libros de contabilidad del demandante. Tales libros no son más que evidencia, no siendo ni indispensables ni concluyentes. La decisión debe basarse en hechos reales, que en el presente caso no están en disputa."

La teoría sustentada en los casos antes citados se encuentra también en la obra "Depreciación, Principios y Aplicaciones," de Earl A. Saliers, profesor de la Universidad de Yale, en la que en la página 502 se dice lo siguiente:

"Menoscabo en el valor de la propiedad a causa de agotamiento, desgaste y deterioro en el curso del negocio es un hecho real, ya esté o no evidenciado por asientos en los libros.

"Sin embargo, una cantidad por depreciación y desuso debe ser cargada por el contribuyente en sus libros y constancias para que constituya una deducción del ingreso bruto. La forma en que se efectúe el cargo carece de importancia, excepto que la cantidad que represente un cálculo razonable para la depreciación debe ser deducida directamente del valor de la propiedad que aparece en los libros, o preferentemente puesta en el haber de una cuenta de reserva para depreciación, que debe aparecer en la hoja de balance anual del contribuyente. La deducción debe ser computada y cargada haciendo referencia expresamente a partidas, unidades o grupos de efectos específicos, y los contribuyentes deben mantener esas constancias en forma tal que puedan ser fácilmente comprobadas.

"Cuanto se dice en el párrafo anterior al efecto de que la deducción por depreciación debe ser cargada antes de que pueda ser rebajada no quiere decir que la depreciación habida durante un año pueda cargarse al ingreso de otro año a los fines de la contribución sobre ingresos; tampoco significa que el dejar de rebajar la depreciación antes de cerrar las cuentas para el año impedirá que el contribuyente a la larga haga la rebaja. Quiere decir que si el contribuyente por inadvertencia deja de hacer los asientos correspondientes en sus libros

562

antes de cerrarlos para el año durante el cual ocurrió la depreciación, y omite hacer la correspondiente deducción del ingreso bruto en su planilla para ese año, él puede abrir de nuevo sus libros, efectuar los asientos adecuados de reajuste en ellos y presentar una planilla enmendada demostrativa de la verdadera deducción por depreciación, siempre que no se pruebe la existencia de mala fe o negligencia crasa en la preparación de su planilla original y en la manera en que él llevaba sus libros.''

La apelada no llamó a la cuenta en que hizo constar la depreciación "Cuenta de reserva," ni la abonó directamente a la cuenta de las propiedades pero la hizo constar en una cuenta especial que llamó "de explotación'', cuyo efecto era cargar al ingreso bruto el importe de la depreciación, dando el mismo resultado que si se hubiera llevado expresamente a una cuenta de reserva. El gobierno no puede inventar ingresos a base de errores en la forma de llevar los libros el contribuyente porque la imposición y la determinación del ingreso neto tributable descansa en hechos ciertos y no en teorías, tecnicismos o entradas en libros de contabilidad.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Córdova Dávila no intervino.