MANUEL FERNÁNDEZ MARTÍNEZ, demandante y apelado, v. MANUEL V. DOMENECH, sustituído por R. SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 7401.—*Sometido:* Marzo 18, 1938. *Resuelto:* Julio 30, 1938.

*Hon. Procurador General B. Fernández García (R. Cordovés Arana, Procurador General Auxiliar, en el alegato) y R. García Cintrón, Subprocurador,* abogados del apelante; *J. Pedro Miranda,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El demandante solicita que se dicte una sentencia a su favor ordenando al demandado en su carácter de Tesorero de Puerto Rico, a reintegrarle las cantidades de $89.47, $111.07, $115.11, $129.98 y $101.51, que fueron pagadas por él bajo protesta en concepto de contribuciones sobre ingresos por los años 1928, 1929, 1930, 1931 y 1932, respectivamente, y además, que se le concedan los intereses sobre dichas cantidades desde que fueron pagadas hasta su completo reintegro con más las costas.

El demandante había pagado voluntariamente por ese mismo concepto $52.52 en 1928, $22.43 en 1929, $13.32 en 1930, nada en 1931 y nada en 1932. Las contribuciones por deficiencias y recargos pagadas bajo protesta son, a juicio del demandante, nulas, arbitrarias e ilegales por haber sido impuestas caprichosamente por el demandado sin tener base para ello.

La corte inferior hace un resumen muy ajustado de la prueba. Dice así:

"El demandante Manuel Fernández Martínez declara en sustancia que hace 30 años se dedica al negocio de provisiones al por mayor y al detalle; su negocio principal consiste en surtir a los ventorrillos y tiene un capital invertido que no excede de $10,000; no lleva libros, tiene varias fincas también de su propiedad y calcula por todo un capital de 20 a $25,000 para el año 1928 y no más de $30,000

para el año 1935. Bueno es que hagamos constar aquí que el año 1935 para nada figura en este pleito, puesto que la última contribución que se impugna es la correspondiente al año 1932. Declara por último el demandante que llevaba un diario y un libro de caja.

"Francisco Freiría, comisionista establecido en la capital, declara que no sabe el capital del demandante; pero sí sabe el negocio a que se dedica, y que en esta clase de negocio y durante los cinco últimos años, el beneficio que se puede obtener fluctúa entre un 3 a un 4 por ciento, dadas las condiciones del mercado de Río Piedras, que es una plaza comercial muy competida. Para ilustrar su aserto, declara que con un capital de $50,000 con que gira, vende al año de 360 a $380,000.

"Manuel Martínez, comerciante mayorista, declara que con un capital de $40,000 vendió en el año 1929, $392,000, lo que da un ingreso bruto de un 5.60 por ciento; declara también que conoce el ramo del demandante y que vende a las tiendas del campo por arrobas y quintales.

"José Malgor Martínez, también comerciante, hace ventas al por mayor y al detalle; declara también en cuanto al estado del mercado de Río Piedras y a la competencia que existe en dicha plaza.

"Por parte del demandado declara Julio López Cruz que desde 1928 a 1933 era inspector de *income tax;* que hizo las investigaciones en la casa del demandante, sita en Río Piedras; que éste tenía un negocio establecido de venta de provisiones al por mayor y al detalle; que tenía mucha existencia en su almacén, las que calculó hasta $16,000; que no llevaba libros, sino solamente apuntes y una libreta en que anotaba las cuentas; que sumó los apuntes y llegó a la conclusión de que vendía de 8 a $10,000 mensuales, o sea $100,000 al año, más o menos; que estimó el beneficio bruto en un 10 por ciento para lo cual tomó como base casos similares y las notas que llevaba el demandante.

"Adolfo López Capó, inspector de *income tax*, liquidó las contribuciones al demandante, lo que hizo de acuerdo con los datos suministrados, y que la contribución se impone sobre el ingreso."

Basada en esa prueba, dictó sentencia ordenándole al Tesorero que reajuste o rectifique la contribución impuesta al demandante por los años 1928–1932, inclusive, tomando como base el ingreso neto sobre un total de ventas de $50,000 y un beneficio bruto de 5 por ciento y que devuelva al deman-

dante aquella cantidad cobrada en exceso de este cálculo. El Tesorero apeló. Señala cinco errores, a saber:

"1. La Corte de Distrito cometió error de derecho al declarar sin lugar la moción para eliminar formulada por el demandado.

"2. La Corte de Distrito cometió error manifiesto en la apreciación de la prueba al estimar y fijar en $50,000 anuales el volumen de ventas del demandante durante los años 1928 al 1932, inclusive, en su negocio de compra y venta de provisiones establecido en Río Piedras.

"3. La Corte de Distrito cometió error manifiesto en la apreciación de la prueba al estimar y fijar el beneficio bruto obtenido por el demandante en su predicho negocio en cada uno de los años 1928 al 1932, inclusive, en la suma de $2,500, o sea en un 5 por ciento sobre $50,000.

"4. La sentencia de la Corte de Distrito ordenando al 'Tesorero de Puerto Rico reajustar o rectificar la contribución sobre ingresos impuesta al demandante por los años 1928 al 1932, inclusive, tomando como base el ingreso neto sobre un total de ventas de $50,000 y un beneficio bruto de 5 por ciento, y devolver al contribuyente aquella cantidad cobrada en exceso de este cálculo, es contraria a las alegaciones y a la prueba.

"5. La Corte de Distrito cometió error al declarar con lugar la demanda de este pleito y dictar sentencia a favor del demandante y en contra del demandado."

■ El primero tiene que ver con una moción presentada por el demandado en que solicitaba la eliminación de las frases "en su oportunidad" y "contribución que es nula, arbitraria e ilegal, por haber sido impuesta caprichosamente por el demandado sin tener base alguna para ello, ya que los beneficios que se alegan recibió el demandante en dicho año...son inciertos y nunca han sido obtenidos por el demandante" que aparecen en las cinco causas de acción ejercitadas por el demandante en su demanda. La corte inferior denegó la eliminación solicitada por entender, en cuanto a la primera frase, que si bien constituía una conclusión de derecho, ningún perjuicio se causaba al demandado con dejarla subsistente, y en cuanto a la segunda, porque aunque

en efecto era una conclusión de derecho, estaba seguida de palabras que constituían el fundamento de tal conclusión.

A nuestro juicio no es necesario resolver si la corte debió haber declarado o no con lugar la moción eliminatoria presentada por el demandado porque, aun asumiendo que al declararla sin lugar se equivocara, ello por sí solo no sería suficiente para causar la revocación de la sentencia según lo ha resuelto ya este tribunal en el caso de *El Pueblo* v. *Sucesión Valdés,* 31 D.P.R. 223, 229, donde se dijo:

"El error, de haber alguno, al declarar sin lugar la moción para eliminar y la excepción previa a la demanda, era de carácter técnico y no perjudicaba. La demanda apenas si puede recomendarse como modelo de buena alegación, pero en el actual estado del procedimiento no estamos dispuestos a hacer un análisis más o menos censurable de la laxitud en el estilo o de la falta de precisión en la elección de las palabras, ni como resultado de tal estricta interpretación revocar la sentencia dictada por la corte de distrito por razón de cualquier mero defecto técnico u omisión en la demanda."

Los cuatro errores siguientes los discutiremos conjuntamente por referirse todos ellos a una misma cuestión.

El inciso (*b*) de la sección 14 de la "Ley de Contribuciones sobre Ingresos, de 1924," que es la núm. 74 de 1925 (Leyes de ese año, pág. 401), dispone:

"(*b*) El ingreso neto será computado sobre la base del período anual de contabilidad del contribuyente (año económico o año natural, según sea el caso) de acuerdo con el sistema de contabilidad usado regularmente por el contribuyente en sus libros; pero si él no llevare libros de contabilidad, o si el sistema usado no refleja claramente su ingreso, la computación será hecha de acuerdo con el sistema que en opinión del Tesorero refleje claramente el ingreso. Si el período anual de contabilidad del contribuyente es otro que el de año económico según se define en la sección 3, o si el contribuyente no siguiera un período anual de contabilidad o no llevare libros, el ingreso neto será computado a base del año natural."

El Tesorero demandado estimó que los ingresos netos del demandante correspondientes a los años comprendidos entre 1928 y 1932, ambos inclusive, eran mayores de lo que él había

declarado al rendir sus planillas de ingreso correspondientes a dichos años, y valiéndose de la facultad que la sección arriba transcrita le confiere, y por el hecho de no llevar el demandante libros en su negocio, le impuso una contribución de acuerdo con el ingreso que calculó había tenido el demandante durante cada uno de dichos años. Así, en vez de $52.52 que el demandante había declarado en 1928 le impuso una contribución de $141.99; y en vez de $22.43 que había declarado en 1929 le impuso $133.50; y en vez de $13.32 que había declarado en 1930 le impuso $128.43; y en 1931 y 1932 que el demandante no había declarado ingresos le impuso una contribución de $129.98 y $101.51, respectivamente. La diferencia entre la cantidad pagada voluntariamente por el demandante y la contribución impuesta por el demandado es lo que se reclama en esta demanda.

El sistema usado por el Tesorero a través de sus agentes para calcular la contribución impuesta al demandante no refleja claramente el ingreso neto que obtuvo en su negocio durante cada uno de los años 1928 al 1932, inclusive.

El testigo López Cruz que hizo la investigación declara que es inspector de *income tax;* que antes de investigar el negocio del demandante se informó con amigos suyos del volumen de negocios que hacía, de la clase de individuo que era el demandante y de la naturaleza del negocio que tenía en Río Piedras; que por la práctica que tenía calculó las existencias que había en el colmado en 10, 12 ó $16,000; que su investigación la hizo en el año 1933; que por los apuntes que el demandante conservaba, correspondientes al año 1933, calculó un volumen de ventas de 8 a $9,000 mensuales y de $100,000 al año; que calculó el beneficio bruto de acuerdo con su experiencia al determinar el de otras casas como la de Freiría & Co., que también se dedica al mismo ramo, estimándolo en un 10 por ciento; que los apuntes que el demandante le suministró sólo tenían la fecha del día y la cantidad de las ventas y que no le fueron suministrados

inventarios; que calculó las existencias que el demandante tenía por lo que vió pero que no tuvo ante sí ninguna factura.

Tanto el volumen de ventas como el por ciento de beneficio bruto que el testigo le calculó al demandante está, a nuestro modo de ver, basado en un sistema arbitrario y caprichoso, y no puede, por ende, ser reflejo del ingreso neto sobre el cual se le impusieron al demandante las contribuciones de deficiencia que ahora reclama. El testigo López Cruz declara que sus cálculos están basados, entre otras cosas, en lo que amigos de él le informaron sobre la naturaleza del negocio del demandante. El cálculo sobre existencias está basado en lo que el testigo López Cruz vió el día que hizo la investigación, allá en el año 1933, y sería entrar en el terreno de las conjeturas el tratar de precisar lo que dicho testigo hubiera visto en el año 1928 o en el 1929 o en cualquier otro año de los sujetos a investigación. Declaró también que estuvo toda una mañana en el establecimiento del demandante, y ello bastó para recoger la data en que más tarde fué basada la contribución por deficiencia impuesta al demandante.

No es ése "el sistema...que refleja claramente el ingreso" a que se refiere la sección 14 antes transcrita. Como se dijo en el caso de *Loíza Sugar Co.* v. *Domenech, Tesorero,* 44 D.P.R. 556, 562:

"....El gobierno no puede inventar ingresos a base de errores en la forma de llevar los libros el contribuyente porque la imposición y la determinación del ingreso neto tributable descansa en hechos ciertos y no en teorías, tecnicismos o entradas en libros de contabilidad."

Y en el de *In re Sheinman,* 14 F. (2d) 323, donde se trataba de una ley exactamente igual a la nuestra:

"La fijación de la cantidad de ingreso neto tributable del contribuyente es la fijación de un hecho. De hechos reales y no de entradas en los libros es que surge el ingreso. Los libros de contabilidad no son otra cosa que evidencia. Ni son indispensables ni concluyentes. *Doyle* v. *Mitchell,* 247 U. S. 179, 38 S. Ct. 467, 62

L. Ed. 1054; *Southern Pacific Railroad* v. *Muenter,* 260 F. 837, 171 C.C.A. 563; *Douglas* v. *Edwards* (C.C.A.) 298 F. 229; *Baldwin Locomotive Works* v. *McCoach,* 221 F. 59, 136 C.C.A. 660.

"El método empleado por el Negociado de Ingresos en el caso de autos estaba basado en los libros de contabilidad de otras personas y no indica cuál era el ingreso real del quebrado durante los años en cuestión. No es tan determinante de los hechos como las entradas en los libros del quebrado lo serían, ni tampoco está apoyado por hechos extrínsecos presentados en evidencia. Lo que se hizo fué buscar lo que otros contribuyentes habían declarado como sus ingresos netos o lo que el Negociado encontró que eran los ingresos de tales contribuyentes, y seleccionarse un promedio entre la proporción del ingreso declarado de tales otras personas y el volumen de ventas, y entonces hallar como un hecho que tal promedio representaba el ingreso actual del quebrado. Esto no era la fijación de un hecho sino simplemente la exposición de una teoría."

En *In re Harrington* (D. C. Mo. 1924), 1 F. (2d) 749:

"Éste es, desde luego, el propósito fundamental de la ley, que la contribución del contribuyente sea impuesta sobre su ingreso actual, y que éste no sea ni disminuído ni aumentado por métodos arbitrarios o artificiales de computación. Como dice la ley, 'el verdadero ingreso debe ser claramente reflejado,' y para tal propósito los métodos de contabilidad corrientes y antiguos empleados por el contribuyente, usados comúnmente y con ningún propósito ulterior, son deseables."

Véase además Paul and Mertens, "The Law of Federal Income Taxation," Vol. I, pág. 110, sección 5.07.

La contribución impuesta por el Tesorero en el caso de autos no está basada en ningún sistema sino más bien en el capricho y la arbitrariedad del agente a cuyo cargo estuvo la investigación de las planillas de este demandante. De la prueba no aparece que se investigara si el demandante tenía relaciones con algún banco local y de tenerlas el importe de los depósitos que hacía y de las cantidades giradas, lo que hubiera dado una idea más exacta de la naturaleza e importancia de su negocio. Tampoco se tomó como base el volumen de ventas que hacían y beneficios que derivaban otros comerciantes de igual o parecida importancia en el comercio,

sino de otros cuyo capital era muy superior al del demandante, lo que necesariamente resulta en mayores rendimientos o beneficios. Tampoco declararon como testigos del demandado aquellas personas a quienes el testigo López Cruz se dirigió antes de hacer la investigación para que le informaran en cuanto a la persona del demandado y a la naturaleza de su negocio. En vista de todo lo cual *procede que se confirme la sentencia apelada.*

El Juez Asociado Señor De Jesús no intervino.